MARGARET ALEXANDER *vs.* WILLIAM STEWART AND OTHERS.—*December*, 1836.

The Orphans courts have exclusive cognizance in the appointment of administrators, *de bonis non*, and where an executor had not completed his trust, by the payment of all legacies and the delivery over of the property in his hands to the persons entitled, the exercise of the power of appointment was held to be rightful.

It is the duty of an administrator, *de bonis non*, thus legitimately clothed with authority, to take possession of the effects of the deceased testator existing specifically; return an inventory thereof to the Orphans court, and to distribute the same among the parties entitled, according to their respective rights; and with the due exercise of this lawful authority, no tribunal can rightfully interfere.

The inadequacy of the sureties in an administration bond, may under certain circumstances, furnish a basis for the ancillary jurisdiction of a court of equity in restraining the authority of an administrator, until the *Orphans court* can inquire into the subject and secure the parties concerned, by demanding new security.

So the Orphans courts are the exclusive judges of the sufficiency of the penalty of the bonds required of executors and administrators, and the court of Chancery, cannot in this respect, review their determinations.

Property remaining specifically after the death of the original executor or administrator, is unadministered property; and the appointment of an administrator, *de bonis non*, in such case, is indispensably necessary to give title to the distributees, even though all the debts are paid, and if in such circumstances, the administrator of the first executor transfers the property to the distributees, their possession is liable to be divested by the subsequent grant of letters *de bonis non*.

Alexander *vs.* Stewart.—1836.

A court of Chancery has no power to vest property so situated in the distributees, except through the medium of such administrator, whose duty it is, after the return of an inventory, if the debts are paid, to transfer the property to the parties entitled without delay.

APPEAL from *Chancery.*

The bill was filed in this cause on the 15th December, 1835, by *William Stewart,* and the infant children of *Eaton R. Partridge,* and charged that *John Partridge,* by his last will and testament, after making devises and bequests in favour of his sister, *Margaret Alexander* and others, devised all the residue of his estate of every kind to said *Stewart* and *John B. Morris,* in trust for said *Eaton R. Partridge,* for life, with remainder to his children, and deliverable to them upon their attaining the age of twenty-one years; that said *Eaton* was appointed executor of and obtained letters testamentary upon the estate of said *John ;* that said letters were granted on the 21st September, 1831, and an inventory returned of said estate on the 25th September, 1831, the appraised value of which, (including money of the testator on hand at his death amounting to $11,007 95,) amounted to $207,134 95; and consisted (beside said money,) almost entirely of stocks in various corporations; that said executor after due and legal notice paid off all the creditors of the deceased; that said *Eaton* transferred unto himself, all the stocks and property which he, under the said will, was directed to hold in trust for certain specified legatees, and effectively administered said estate; *and was ready to transfer to said William Stewart and John B. Morris, the property devised to them in trust as aforesaid;* that said *Eaton,* as executor aforesaid, rendered to the Orphans court of *Cecil* county his first and only account on the 11th October, 1833, which shows the full administration of said estate, save only the payment of $6,000 to the three children of *James Partridge,* which was to be made only after the rendering of said account—and that the residue of said estate then in his hands was equitably the property of the said trustees, for the trust established by the will of said *John Partridge.* And the said bill then charged, that the balance

of said estate exhibited in said account, as in said executor's hands, amounting to $170,893 37½, consisted of, and yet exists in, property specifically of said testator, and embraced in the inventory aforesaid and therein appraised to $135,005, of the description following, that is to say : certain enumerated stocks, &c.; and the residue of said balance $35,888 37 was accountable for in money by said *Eaton*, and is yet so by his representatives, subject to such deductions as may be equitable and proper; that a part of said balance has been invested by said *Eaton ;* that on the 24th August, 1835, said *Eaton* died intestate, and that administration on his estate has been granted to his widow, *Susan S. Partridge*, who was also appointed guardian of his infant children.    The bill further shows, that since the said *Eaton's* death, the said *Margaret Alexander* was appointed by the Orphans court, of *Cecil* county aforesaid, administratrix *de bonis non, C. T. A.* of the estate of said *John Partridge*, and bonded therefor; that the said *Margaret* claims of said administratrix of *Eaton*, and seeks to get into her possession and control, the balance of the said testator's estate in said *Eaton's* hands accountable for as aforesaid, and deliverable over by said *Eaton*, as well the stocks aforesaid specifically remaining of said testator's estate, as the residue aforesaid of said balance appearing payable as aforesaid in money ; that she is thus taking without any desire to benefit the *cestui que trusts* or to accomplish the intentions of the testator, but to subject said estate to the unnecessary formality of going through a prolonged and supervening administration, and the heavy tax of further commissions for a useless and dilatory ceremony; that the said property in his hands will be in jeopardy and danger of loss ; that the sureties of said *Margaret*, as well as herself, are entirely insufficient for the amount of said bond; that the bond which was for $100,000 is insufficient in amount; that she claims to have the whole residue of said estate brought into her possession ; that said *John B. Morris* declined acting under said will; that *Susan S. Partridge*, the administratrix of *Eaton*, is proceeding to settle up his estate, and is willing

to place all the evidences of the claims of the said *John's* estate under the control of this court for the directions thereof; and that complainants are ready to indemnify said *Margaret* for the expenses of said administration *d. b. n.* and pay her such reasonable compensation as may be directed by this court.

*Prayer* that *Susan S. Partridge*, as administratrix of *Eaton*, may account for him as executor of said *John ;* and that she may be directed to pay all sums and property due that estate into this court, &c.; and if necessary, that your complainants may use the name of *Margaret Alexander*, in all such suits at law against said *Susan S. Partridge ;* that said *Margaret*, as administratrix, *d. b. n.* may be ordered to transfer to your complainant as trustee all the stocks specifically remaining of said *John's* estate, and all claims against said *Eaton* and his sureties, *and that said Susan may be enjoined* from delivering to said *Margaret*, any of the certificates of stock, or evidences of title relating to the property of her said testator, and that said *Margaret may be enjoined* from, or in anywise interfering with any of the stocks aforesaid, and from instituting any proceedings in the Orphans court of *Cecil* county to recover the same from said *Susan ;* and from further prosecuting any suit already commenced, and for other relief upon this bill, (with which was exhibited the will of *John Partridge*, and the inventory of his estate,) the Chancellor (*Bland*,) ordered an injunction as prayed. And on petition on behalf of the infants, appointed a receiver to receive the dividends on the stocks of the estate subject to the future order of the court.

The answer of *Margaret Alexander*, admitted the will of *John Partridge ;* the appointment of *Eaton R. Partridge*, as his executor by the Orphans court of *Cecil* county, his inventory and account; that she was ignorant whether said *Eaton* had paid all, but knows that he had *not* collected all the debts of the deceased; she denied that said *Eaton* did effectually administer said estate, and charged him with wasting it; she denied that his account shows a full administration of said

estate, or that the residue was equitably the property of the trustees under the will; she admits the specific enumeration of the stocks, and *Eaton's* death; the appointment of his administratrix and guardian to his children; her own appointment as administratrix *d. b. n.* of *John Partridge;* and that it is her intention to get into her possession the estate of the said *John*, to which she is by law entitled; denies all improper motive or administration for improper, illegal, or unnecessary purposes, and charges that she is the sister of deceased; that the property will not be in jeopardy, and that she has given ample security, and is willing to give any further security which the courts may demand, and insists upon the exclusive jurisdiction of the Orphans court upon the subject of the security given by administrators, and that she is ready to proceed according to law with her said administration.

The other parts of the answer are not deemed material by the reporters.

The Chancellor upon motion, after the coming in of the answer, refused to dissolve the injunction, but continued it until final hearing or further order of the court, upon which the said *Margaret Alexander*, took her appeal to this court, under the acts of 1835, ch. 346; sec. 2, and ch. 380, sec. 3.

So much of the will of *John Partridge* as is necessary, is sufficiently adverted to in the argument of the counsel in this cause.

The cause was argued before BUCHANAN, Ch. J. and STEPHEN, ARCHER, DORSEY, CHAMBERS, and SPENCE, Judges.

McMAHON for the appellant contended:

1. That the Orphans court of *Cecil* county had full power to grant letters of administration *de bonis non*, with the will annexed, upon the estate of the late *John Partridge*, to the appellant; and that the authority conferred by such letters, rightfully extended to all the estate left by said *Partridge*, and especially to all of it remaining specifically in the hands or

under the control of the late *Eaton Partridge*, as executor of said *John Partridge*, at the decease of said *Eaton*.

2. That whether the letters were or were not improvidently issued, the authority of the Orphans court of *Cecil* county to grant them could not be collaterally drawn into question, nor the authority conferred by such letters impeached, denied, or controlled in the proper exercise of it by a collateral proceeding in another court, such as was the bill of the appellees in this case, and the injunction issued thereon; and that therefore the appellees were not entitled to the injunction in this case upon the ground that the letters of administration to the appellant were unnecessarily or improvidently granted.

3. That the injunction in this case cannot be sustained upon the ground, that the security given by the appellant as said administratrix *de bonis non* was insufficient, because the question of the sufficiency of such security was one over which the Orphans court of *Cecil county* had exclusive jurisdiction; and because the equity of the bill, if any, as to this ground, is wholly removed by the answer of the appellant.

4. That the remaining equity, if any, is wholly denied by the answer.

5. That whether the court of Chancery could or could not properly afford relief by injunction in a case like the present, these complainants were not the proper parties to seek it, and were not entitled to the injunction.

He further contended, that the material question was, whether an administrator *de bonis non*, properly appointed by the Orphans court, could be restrained from the exercise of power expressly granted by an act of assembly. From the bill it appears, that a large amount of the assets of the deceased remained specifically in the hands of the first executor; that he had wasted a large amount by an unauthorized and pretended investment, and from the will of *John Partridge*, five distinct bequests appear.

1. A devise in trust to *Eaton R. Partridge*, for the appellant and his children, a part of which was in bank stock.

2. A legacy to each of *James Partridge's* children living at the death of the testator.

3. Bequests relating to the manumission of his negroes.

4. A bequest of the law library of the testator to the son of *Eaton R. Partridge*, at the age of twenty-one.

5. The residue of his estate to *Stewart and Morris*, in trust for *Eaton*, for life, with remainder to his children.

The extent of *Eaton's* administration is conceded by both bill and answer. The trust estate to *Margaret* and her children has been completed. The bequest to the children of *James Partridge* was also completed, and there is no allegation that any refunding bond was taken. The answer denies the manumission of the negroes or the money paid to them. It denies that the bequest of the library has been completed. It denies that the debts due the estate are collected. The proceedings show the extent to which the estate is unadministered, and the answer denies all intention to injure it, while the sufficiency of the security given by administrators *d. b n.* is insisted upon.

The act of 1798, ch. 101, sub ch. 5, sec. 6, and sub ch. 14, sec. 2, provides for the granting of letters to administrators, *d. b. n.* and directs them to administer all things not converted, not distributed or delivered over. The act of 1820, ch. 174, but for the decision of *Sebley vs. Williams*, 3 *Gill and John.* 61, I should construe to direct that the whole estate of a deceased should pass to the hands of the administrator, *d. b. n.* But that decision is otherwise, so that where the acts of 1798 and 1820, do not cover the property of the deceased, an administrator, *d. b. n.* cannot recover at law, as for wasted and consumed property; and if the object of the injunction was to prevent a recovery for such a conversion, it is unnecessary, as the law gives full protection. While, if the law entitles the administrator to recover, an injunction cannot restrain her.

If the Orphans court had no power to grant these letters, chancery cannot impeach nor over-haul them, as the whole jurisdiction in granting letters is conferred on the Orphans court, and its action in that respect cannot be impeached collaterally in equity. *Raborg's adm'x vs. Hammond's adm'r,* 2 *Har. and Gill,* 42.

Again, if the estate is fully administered, what purpose can the injunction answer? The administratrix of *Eaton*, can then protect herself at law, and the interference of equity is unnecessary.

If the property is wasted, the bond is answerable for *Eaton's* misconduct.

If the estate is *not* fully administered, and *Mrs. Alexander* could recover at law, it is certain, that chancery, by injunction, cannot over-haul the jurisdiction of the Orphans court. One court cannot prevent another court from carrying out its decrees.

Then as to the security. If the administratrix, *d. b. n.* was regularly appointed and good security accepted, chancery cannot interfere.

A court of Chancery will entertain a bill against an executor or administrator on the ground of insufficient security; but this bill is not for that. It denies the power to grant letters at all. It does not proceed on the ground that they were rightfully granted, and the parties fearful of abuse. The English cases do not apply. There the executor gives no security. There are some cases in which the administrator gives security in the ecclesiastical courts, then chancery will interfere. The act of 1798, sub ch. 3, sects. 1, 5, 6, 7, are clauses which relate to the *primary* security. The act of 1807, ch. 136, sec. 3, authorizes the Orphans court to take additional security. Here in four weeks after grant of letters, chancery was prayed to interfere. What is it then but a direct impeachment of the Orphans court, on points exclusively confined to its jurisdiction? Confidence must rest some where. The law confides this power of judging of the sufficiency of the security to the court granting the letters. This court cannot review its action upon appeal in such cases, and yet it is supposed, that a court of Chancery, collaterally by injunction, can impeach the decision and prevent the party from going on. The right to interfere in such mode must be upon supervenient insolvency, as in cases of administration in *England*. The primary power of appointment, and the

primary judgment of security resides in the Orphans court ; and so the primary power over the additional security must reside in the same court, under the act of 1807, which was only declaratory of the law.    Even if it be a case of concurrent jurisdiction, the Orphans court commenced the matter, and the grievance ought to be stated there.    In such cases chancery comes in as subsidiary, and on the ground of inadequacy of relief.`    So of creditors and distributees bills, which proceed on that ground, or to make the relief sought more diffusive and effective.    The jurisdiction of the Orphans court is exclusive, and chancery is ancillary.    Show an appropriate legal remedy and chancery cannot act.

When an equitable defence is extended at law by statute, chancery loses its jurisdiction with the necessity for the case.

. But if we concede jurisdiction on the question of the security, what becomes of the equity of the bill?    The answer denies the alleged insufficiency, and offers to give any further security.    The court calls her in for further security and she offers it.    She is not to be ousted nor treated as an insolvent.

· Nor has chancery any jurisdiction over the question of commissions, 1798, sub ch. 10, sec. 2, 1820, ch. 174.    *McPherson vs. Israel*, 5 *Gill and John.* 60.

He further contended, that the proper complainants were not before the court, who could insist upon the wrongs mentioned in this bill.    It alleged that the whole estate had been administered—of course, for any redress resort could only be had to *Eaton's* bond.    *Margaret Alexander* is about to complain of his administratrix, and she is no party complainant here ; yet she is the proper party to complain for the redress of every grievance which can be considered on this motion. On this motion the question of insufficient security is not of the cause.    *State use Chamberlain vs. Wright*, 4 *Har. and John.* 148.    And the administrator alone represents and is authorized to collect the personal estate.    Legatees cannot recover except through her, even after payment of all debts. *Woodin, et al vs. Bagley's ex'r*, 13 *Wend.* 453.

D. STEWART for the appellee contended :

That the injunction was properly continued.

1. Because the answer did not deny the equity of the bill, since it admitted all the allegations as to the complete administration of the estate ; and did not deny that the debts of the testator had been paid, while it admitted the due notice to creditors to present their claims. And in effect showed that the appellant had but a mere formal duty to discharge—that of transferring to the trusts of the will for *Eaton R. Partridge's* children, the stocks specifically remaining of the testator's estate.

2. Because if the question can be made on this appeal, the injunction was properly granted. A court of equity having jurisdiction in case of legacies, and being authorized to enforce the payment of the legacies here, and protect the interests of the legatees in the manner by the bill prayed, even if as to all, but these appellees, the estate had not been administered ; and notwithstanding it might not appear that the interests of the appellees would be jeoparded by allowing the appellant to take possession of the estate.

3. Because, notwithstanding the renunciation of *Morris*, as trustee, the plaintiff, *Stewart*, in connection with the *cestui que trusts*, had a right to prosecute this bill, and claim the protection of the trust property, and that the court having jurisdiction for the benefit of these legatees might proceed as in case of other trusts, to decree as might be equitable for all parties concerned in the estate of the testator.

The court will perceive that letters were granted to *Eaton* in September, 1831. That he immediately returned an inventory, and on the 11th October, 1833, settled his first account as executor. He died in August, 1835. The appellant has received her legacy, and all the legatees had a right after the lapse of thirteen months, under the act of 1798, sub ch. 8, sec. 1–14, to receive their legacies. His account for commissions was settled with the Orphans court, who paid him for the whole estate. The negroes were transferred according to the directions of the will, and in short, there was nothing

to do except to hand over the large bulk of the estate to the trustees appointed by the will. The creditors were all paid off, and as to the outstanding debts whether they were sperate or desperate does not appear. These circumstances show that in effect the estate of *John Partridge* was fully and effectually administered, and that the appellant should not have interfered with it for any purpose. *Royall vs.. Eppes,* 2 *Munf.* 490.

MAYER for the appellee.

It is within the power of the court of Chancery, as in a case of trust, to take cognizance of the legacy of complainants. An executor is regarded as a trustee in chancery. The duty of *Eaton R. Partridge,* as to this estate, was also the duty of *Mrs. Alexander.* If he was bound to surrender it to the trustee, so is she. The counsel has confounded the fact of the consummation of this administration with the ordinary evidence of it. The stocks which remain specifically, belong to the *cestui que trusts,* and the administrator, *d. b. n.* under the act of 1820, has no right to interfere with them, though it is the only property remaining, for there is no necessity for an administration. Considering the two administrators as identical in point of law, this is a bill for relief. The prayer calls for a transfer of the stock. It is undeniably the property of the appellees, and if *Eaton* was in default at his death, in not transferring this property, and it is now competent to *Mrs. Alexander* to make an inventory of and procure a commission upon it from the Orphans court; the jurisdiction of chancery over this as a legacy is entirely excluded. In *Coward and Martin vs. The State, ante,* 7 *Gill and John.* the court considered the right of distribution perfect at the end of thirteen months, and though no final account is passed. The court will look to the fact that the debts are paid, independent of the accounts, which are the mere record evidence of the settlement. The rights of the distributees are vested rights at the time of the death of the testator—suspended merely as to the right of recovery—full time, four years, has elapsed to pay debts—notice given and no pre-

tence of debts existing, and even a creditor may assert his rights in this court after notice of his claim. The executor could not have set up an outstanding indebtedness in opposition to this bill, and it is of course not competent to any of the parties. *Freeman vs. Fairlie*, 3 *Merr.* 37. If that be out of the way, nothing remains but the legacies to the minor children of *James Partridge*. With regard to jurisdiction over legacies, I refer to the act of 1798, sub ch. 10, sec. 11, which shows that chancery may interfere. A court of equity will decree immediate payment from those bound ultimately according to the justice of the case. *Riddle vs. Mandeville*, 5 *Cranch*, 330, and if this is clear, for what purpose go into equity except for commission.

The legal estate in the stocks is vested in the administrator, *d. b. n.* but we have a right to intercept it in chancery. *Share, et al vs. Anderson's ex'rs*, 7 *Serg. and Raw.* 62. *Dorsey vs. Smithson*, 6 *Har. and John.* The administrator, *d. b. n.* is the representative of the intestate. An executor is a mere trustee in equity, and on that principle chancery settles the estate. 2 *Sch. and Lef. Batten vs. Earnley*, 2 *Peer. Wms.* 163. *Slamming vs. Style*, 3 *Peer. Wms.* 336. 3 *Bac. abr. Tit. ex. and ad. Letter A. T.* , 1 *Story Com.* 512. *Toll. Ex'r*, 482, 496.

R. JOHNSON, for the appellee.

When this bill was filed the period under the notice given had expired for creditors to bring in their claims, and no liability existed except as to debts exhibited. The bill alleges no other debts. The answer does not deny it. On this motion the facts not denied are true. The complainants are all the parties interested on the distribution of the residue of this estate, except only a legacy due to a minor son of *James Partridge*. *Mrs. Alexander* was a legatee and paid in full. So far as mere justice is concerned nobody ought to touch this estate, except the complainant and the minors. *Mrs. Alexander* has no possible interest in winding up this estate, except the commissions she may earn. It is an administration

contrary to the wishes of the parties interested, and saddles the estate with further commissions.   It can only end in loss and risk of injury to them.   I propose to examine.

1. What were the rights of the complainants in the lifetime of *Eaton R. Partridge*.

2. Whether those rights at the death of *Eaton*, are at all altered by not having formally administered the estate in full.

With reference to what is a full administration that is to be decided here, with reference to the rights of the parties, as they would be upon a full administration.   With reference to creditors, their rights are to be considered, as to what constitutes a full administration in respect to them.   The same rule applies to distributees.   1798, ch. 101, sub ch. 8, sec. 6, 14.

The actual payment of debts is the epoch at which the right to distribution commences; after *thirteen* months, there is a presumption of payment of debts.   Before that upon proof of actual payment the right attaches.   It may attach immediately after the death.   The object of the act of 1798, and all such laws, is to pay over to the distributees the property of a deceased, as soon as the contingency happens on which their title is consummated.   It is solely to ascertain beyond dispute that the contingency has happened.   All its provisions are nothing but machinery to bring about the actual payment of debts, and carry out the intentions of testators. None can doubt that before the death of *Eaton R. Partridge,* he could be called to surrender specifically the assets and account for the assets converted by him into money, and this could be done in equity, though a concurrent jurisdiction should exist in the Orphans court.   *Story's Equity,* 505 to 552.

Then what is the effect of the executor's death on the rights of their complainants.

The bill is misapprehended.   It is not a bill to revoke letters, nor to interfere with the powers of the Orphans court. It is to keep out of the hands of the administrator, *d. b. n.* the assets, the right to which existed in the complainant, before this second administration was granted; or to ask in

chancery, that the second administrator shall be considered as a mere formal party, so as to prevent the Orphans court from deciding upon it as an original administration.

What would the courts do upon a bill against *Eaton,* in his life, in the event of his death? Would you have deemed an administration, *d. b. n.* necessary? Would you have decided the question of commissions or sent that inquiry to the Orphans court for adjudication. The question is clear. If jurisdiction once attaches it draws every question necessary to justice between the litigants before it. Even in a case of an original administration, if jurisdiction once attached in chancery, that court would settle the question of commissions. Equity has concurrent jurisdiction, and a concurrent right to settle every question. The act of 1798, is to be construed with reference to the court in which the administration is completed. The case of *Raborg vs. Hammond,* 2 *Har. and Gill.* 42, is decisive of this point. The Orphans court has *exclusive jurisdiction over the appointment,* but that once made, a trustee is brought into existence. Chancery jurisdiction attaches, which is co-extensive with the whole subject and conclusive in its action. It would be an anomaly, that a court of admitted jurisdiction having the cause should not have the power to inquire into and compensate a trustee for his trouble. When an administrator accounts in chancery, that court is the best court to fix the allowance. The act of 1798, is only exclusive where the executor accounts before the Orphans court. There is another inconvenience. There is no difference in the time allowed the first, second, or third administrator to settle before the Orphans court. Each has thirteen months from the date of their respective letters, and in this way a full administration upon the idea of exclusive jurisdiction in the Orphans court might be unnecessarily and almost indefinitely postponed. The case of *McPherson's adm'rs, vs. Israel, adm'r of Agnew, in* 5 *Gill and John.* 62, was intended to apply to a claim for commissions, upon a perfect administration before the Orphans court, whether the work of one or more administrators and the estate was not to

be taxed more than ten per centum. But in construing the act of 1798, we are competent to look at the law of administration in *England,* and the duty of the administrator, *d. b. n.* there, is his duty here, except altered by act of assembly. He is there merely considered as the successor of the first administrator. It could not be the intent of the law to compensate him, without considering how far the estate had been admininistered.

Whatever condition the estate is, in the hands of the first administrator; whatever the rights of legatees as against him, the same exist against his successor, who is not to return an inventory, nor claim for property wasted by his predecessor, nor give notice to creditors, nor to settle any account showing disbursements but in his own time, and consequently, if the period has elapsed, at which the right of the legatee is in action against the first administrator, and he dies, the administrator, *d. b. n.* is liable to the same obligations and rights. He is a mere successor. Under the act of 1798, sub ch. 5, sec. 6, sub ch. 14, sec. 2, it is in the discretion of the Orphans court to grant letters, *d. b. n.* By the grant, it does not deprive the court of Chancery of its original inherent jurisdiction, which it never loses, but from the action of some exclusive jurisdiction.

Again, the question of insufficient security is not confined to the Orphans court. The act of 1807, was not declaratory of the law; it is merely cumulative. Before its passage chancery had jurisdiction of this question, and it takes away no power from that court.

The second administration not necessary to put the distributees or legatees in possession of the specific assets. If bonds existed due to the testator they could be handed over. If money, or bonds, or notes exist, taken by the *first administrator,* the legal title passes to his administrator. And as to stocks, the bank or company, become a trustee for the party entitled. And where there is a bond for the payment of debts and legacies, there can be no administration, *d. b. n.* Once ascertain that the debts are paid and the law does the

rest. The material question is the meaning of the term administration, does it mean payment of debts, or a full and entire delivery over of the whole estate. We contend our title is complete, and that an actual payment to us by the representatives of *Eaton*, would be a flat bar to the administrator, *d. b. n. Share, et al vs. Anderson's ex'rs*, 7 *Serg. and Raw.* 62. Then why is it, that a court of equity will not relieve at once by causing an actual transfer of the property. The case of *State use Chamberlain vs. Wright*, 4 *Har. and John.* 148, has no application here.

There can be no objection to the period at which the claim is asserted, and though after the appointment of administrator, *d. b. n.* It is like a defence under a plea pleaded *puis darrein continuance.* The matter would always have been a defence if it had existed, and if not such a defence, it does not become so. The case of *Evans, et al vs. Iglehart, et al*, 6 *Gill and John.* 171, shows the right to go into chancery, and 3 *Bacon abr.* 75, establishes, that the right of a distributee is a vested right at the death of the testator, and we contend, that this injunction is only ancillary to the relief prayed for. We seek to be at once entitled to possession of the property, and to prevent the necessity of a second administration. It being in the hands of an administrator, *d. b. n.* or even the right to it being in her, does not defeat this bill as all the parties are here. The injunction is to keep them in *statu quo*, and so protect us from delay.

McMahon for the appellants, in reply.

This is a bill to protect *Eaton R. Partridge*, in the enjoyment of commissions for services not performed, and the defendant is the widowed sister of his testator, *John Partridge*. The whole equity of the bill charging the property to be in jeopardy is gone. The simple contest is about commissions. The assets to $25,000 were wasted by the executor, and what they grudge to the widowed sister, is a paltry commission of five per cent. and to keep her from this, she is impeached with improper motives. The bill raises the ques-

tion, whether equity will enjoin an officer in the due discharge of his duty. It is a bill to provide for the economical administration of the estate of poor *John Partridge*, and to provide an administrator, *d. b. n.* for it, and thus dispense with his sister, *Mrs. Alexander.* Every party must ask for relief consistent with the facts stated in his bill. The object of the relief, is to prevent her action as administratrix, though entitled to the undistributed property, and compel payment by the administratrix of the first executor. Whatever may be the character of the relief prayed, the injunction has nothing to do with it. We seek a dissolution of the injunction which restrains us. I inquire, *first*, can an injunction go to prevent a party from instituting a confessedly groundless claim, defeasible at law? I turn *first* to the specific property, $135,000, remaining in the hands of the administrator of the first executor, *Eaton*. The right to that is denied. Does not the power of the Orphans court extend to the undistributed property? And to the grant of letters affecting it? The counsel concede the power. They say it is discretionary. All agree, that if the estate is not fully administered, the administrator, *d. b. n.* is entitled. What is full administration? A performance of all the duties, the payment of all the debts, the delivery over of all the distributive shares. It is conceded if the debts are not all paid, the estate is not fully administered. I ask, has the executor fully administered? No, he was ready to do it. The argument opposed to me is, that the question of full administration is one not in regard to the whole estate, but only in regard to the particular complainant in each case. Every grant of letters of course presupposes something to be administered. It is a question between the court and the administrator, *d. b. n.* if any duty remains, the general rule is, that letters must go. Exceptions I leave with my opponent. The letters issued on the ground that a duty is to be performed. Letters must go, for no person is competent to recover without them. Creditors and legatees always recover through the representatives of the deceased. The act makes it imperative to grant letters if not

fully administered. It is not discretionary with the Orphans court ; but if so, there is the judgment of a court of competent jurisdiction which has decided the question. The bill concedes, but that for the intervention of chancery, the administrator is competent to recover the property. All it attempts to do is to show conflicting rights, and therefore concludes, that the administrator, *d. b. n.* not entitled.

The proposition is not tenable. If the administrator dies, and property goes into the hands of the administrator, *d. b. n.* the administrator of the first administrator is not responsible, for he is not in privity with the first deceased. Upon these points he cited : *State use Chamberlain vs. Wright,* 4 *Har. and John.* 148. 1820, ch. 174.

Upon the question of commissions he insisted in reply, that the bill was not founded on the idea of concurrent jurisdiction in chancery and the Orphans court, but on the ground of exclusive jurisdiction, in the former having power to prevent the Orphans court from proceeding—nullify its judgment by injunction. *Mrs. Alexander* commenced her action in the Orphans court, but her progress there was arrested, and chancery asked to decide the question of commissions. Chancery has no power to grant commissions to an executor or administrator. Act of 1798, ch. 101, sub ch. 10, sec. 2.

Under the act of 1820, there is an exclusive grant of power to allow commissions to the Orphans court. Although the question is not open on appeal, and a power is given *nominative,* yet the idea of a concurrent jurisdiction is that the power may be exercised in two courts. This is denied. The selection of a particular tribunal by the law imports exclusive jurisdiction in it. This is a statute power. A new power, and it is discretionary in its exercise. This is exclusive, and no other court by analogy can take the jurisdiction.

Independent of express legislation, an executor or administrator is not entitled to commissions. 1 *Wil.* 1138. Chancery had no original jurisdiction on that head. *Manning vs. Manning,* 1 *John. C.* 529. The object of the statute was to produce uniformity, and a power vested in a particular tribu-

nal under fixed limitations is exclusive; and if the ground of jurisdiction on the principles of incidental power is sound, chancery can attract to herself the administration of all estates on the application of legatees.

Where a bond is given to pay debts and legacies, it is a full administration. It converts legacies into debts. But this furnishes no analogy. It has been supposed because *Eaton R. Partridge* was personally responsible for the debts, that it was like the bond above referred to; but they stand on different grounds, and upon all, then we insist that the injunction ought to be dissolved, and *Mrs. Alexander* permitted to proceed as administratrix, *d. b. n.* in the Orphans court, as in ordinary cases.

ARCHER, Judge, delivered the opinion of the court.

The object designed by the injunction in this case is, in our judgment, unattainable. The administratrix, *de bonis non* was appointed by a tribunal having *exclusive* cognizance of such an appointment, and was in our judgment rightfully appointed such administratrix by the Orphans court. The executor had not completed the administration, not having paid all the legacies, or delivered over the property in his hands to the persons entitled thereto, without which, there could be no full administration.

Having thus been legitimately clothed with authority by the Orphans court, the law imposed upon her the performance of certain duties, among which, was the duty to take possession of the effects of the testator, existing specifically; return an inventory thereof to the Orphans court, and distribute the same among the persons entitled thereto, according to their respective rights. With the just, legal, safe, and diligent exercise of this lawful authority and duty, no tribunal could rightfully interfere.

The pretences set up in the bill for such a proceeding, are either destitute of any foundation in the established principles of equity or are removed, if they did exist, by the answer.

We propose briefly to examine the allegations on the subject, that we may ascertain the weight to which they are severally entitled. And first, it is proper to advert to the only allegation in the bill, which seems to look to an injunction as the proper consequence.

It is alleged that the property will be subjected to danger, because the securities are insufficient for the amount of the bond.

The insufficiency of the security in the administration bond, under certain circumstances, may furnish the proper basis for the exercise of the ancillary jurisdiction of a court of equity, in granting its restraining authority, until the *Orphans court* can inquire into the subject, and by the exercise of its authority, render all persons interested, secure, by demanding new security. Such a power, in such a case, might be necessary to save the estate from waste or ruin. But it might perhaps, be doubted, whether the court of Chancery when the *Orphans court* have exercised this jurisdiction, and there has been no insufficiency of security by supervenient causes, could by the exercise of an original jurisdiction review and reverse what had been done. But if the jurisdiction of the court of Chancery on this subject be not merely ancillary, but it possesses a power at all times to inquire and determine on the sufficiency of securities, and to adjudge that new security shall be given, such an equity is here distinctly met by the answer, which avers the security to be good, and offers moreover, such security as the chancellor would deem unexceptionable.

Again it is averred, that the complainants are in danger of a loss, from the fact averred, that the penalty of the bond taken by the Orphans court is not sufficiently large. In answer to this, it may be remarked, that the judging of the penalty of a bond, is confided by law to the Orphans court, whose duty it is to take such bond, and that the Chancery court possesses no power to review their determinations ; and possessing no such power this allegation cannot aid the complainants.

It is further alleged, that the administratrix can only subserve the purpose of a mere ceremony, and will be calculated only to produce delay, and burthen the estate with additional costs and commissions. Believing as we do, that where property remains specifically, after the death of the executor, and that is conceded in this case, it is unadministered property, the taking out of letters of administration is not only demanded by the acts of assembly, but was indispensably necessary to enable the purposes of the testator to be executed, and to give title through the medium of an administrator, to the persons entitled to distribution. We cannot conceive that such proceeding was a useless ceremony. The costs and commission likely to accrue on such administration which forms the subject of complaint, although they will not necessarily be an additional burden to the estate, yet if such should be the case, are the mere legal incidents which are attached to the performance of the duties demanded of the administrator; and cannot legitimately furnish the grounds of any complaint, or create a subject for redress by the intervention of the powers of a court of equity.

If it be conceded that delays are incidental upon an administration, *de bonis non*, this concession could not aid the complainants, for they are delays in fulfilment of the acts of the legislature, and necessary to the legal accomplishment of the title, the complainants are solicitous to obtain.

On this subject it has been well observed, that had the avoidance of delay been the great object of the complainants, such object would more certainly have been attained by allowing the administratrix, *de bonis non*, to have proceeded in the discharge of her duties, for if it had even been necessary that the estate should have remained in her hands for thirteen months, the distributees would before this time, have been entitled to the delivery over and payment of the property and funds belonging to them.

But we apprehend that no such delay could have been necessarily consequential upon this administration. For after the return of her inventory, if the debts were all paid, it would

Alexander *vs.* Stewart.—1836.

have been her duty to have paid over the estate in her hands to the persons entitled to it without delay.

It appears to have been erroneously supposed by the draft-man of this bill, that it was entirely competent for the administratrix of *Eaton Partridge*, to have passed the property remaining specifically in her hands to the distributees, without the intervention of an administrator. It is true, if all the debts were paid, they were beneficially entitled to it; but they could not have been clothed with a legal title but through the medium of an administrator, and had their possession been thus acquired, it might have been liable to be divested by the grant of letters subsequently to an administrator, *de bonis non*. The act of assembly, in express terms, rendering effects specifically existing liable to administration.

It is equally clear, that the Chancery court could by no decree have vested the title in them, but by co-operating to accomplish such a purpose through the administrator. But in this instance we cannot perceive the smallest justification for the exercise of such a power. For instead of there being delay on the part of the administratrix, *de bonis non*, the very complaint is of diligence in the performance of her duties, in her efforts to obtain possession of the property, in which efforts she is restrained by the process in this cause.

We are of opinion that the order of the chancellor granting, and the order refusing to dissolve the injunction, were erroneous.

The injunction will therefore be decreed to be dissolved with costs, and the case will be remanded to the court of Chancery.

ORDER REVERSED.