ELIZA J. NEAL and STANSBERRY S. NEAL, and others
*vs.* MARY C. CHARLTON.

*Administration de bonis non—Effect of a Sale by an Executor
who died without Reporting the Sale or Distributing the
proceeds—Lapse of Time—Jurisdiction of the Orphans'
Court, and Court of Appeals.*

A testator died in the year 1850. His executor qualified as such,
and returned an inventory of the estate; afterwards he returned a
list of sales, passed an account, and in April, 1853, made distribu-
tion of the balance which that account showed to be in his hands.
The executor died in the year 1854. In the inventory which had
been returned by him was included a parcel of leasehold property,
which was not included in the list of sales or in the distribution
made by him. In the year 1878, a petition was filed in the
Orphans' Court by some of the parties interested in the estate,
asking that an administration *de bonis non*, be granted for the pur-
pose of making distribution of said leasehold property. This
petition was resisted by the widow of the testator, on the
ground that the executor had sold the said property to her and
she had paid him for it, and that the claim was barred by lapse of
time. On appeal from an order of the Orphans' Court dismissing
said petition, it was HELD:

1st. That said order regarded as an adjudication by the Orphans'
Court, that no administration was necessary or should be granted,
was erroneous.

2nd. That even if the property had been sold to the widow and paid
for by her, this would form no ground for refusing the letters,
which were necessary for the purpose of perfecting her title. And
if her allegation in regard to the sale were true, it would show
an amount for distribution in the late executor's hands, which
could be reached in this way more appropriately than in any
other.

3rd. That the lapse of time interposed no bar to the granting of such letters.

4th. That it was not the province of this Court as the case stood to decide who was entitled to the letters, but that question first belonged to the Orphans' Court.

APPEAL from the Orphans' Court of Washington County.

The case is stated in the opinion of the Court.

The cause was submitted for the appellants, to BARTOL, C. J., BRENT, GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*Edward Stake* and *Lewis C. Smith,* for the appellants.

No counsel appeared for the appellee.

IRVING, J., delivered the opinion of the Court.

In 1850, Jonathan Charlton, of Washington County, died, leaving a will by which he devised one-third of his property, real and personal, to his wife, Mary Charlton, and all the rest and residue of his estate, real and personal, to be equally divided between his son Otho Charlton, his daughters Mary Anne Charlton, Eliza Jane Charlton and Malinda Charlton. He appointed William Corby his executor, who qualified as such and returned an inventory of the estate. Afterwards he returned a list of sales, passed an account, and in April, 1853, made distribution of the balance which that account showed to be in his hands. In 1854, Corby died. In 1878, the appellants filed a petition in the Orphans' Court of Washington County, setting out the facts hereinbefore stated, and filing copies of said inventory, and list of sales, and his account and distribution which form a part of this record. It also

charges that said Jonathan Charlton left, as part of his personal estate, certain leasehold property in the town of Williamsport, in Washington County, which was appraised and returned in the inventory of said executor, the same being an unexpired portion of a lease for ninety-nine years, and alleges that said leasehold property had never been sold by said executor, nor divided in any way among the legatees, but remained undisposed of until this time, and filed with the petition, a copy of the instrument by which the testator acquired the property, a copy of which is also in the record. The petition also states that Mary Anne Charlton and Otho Charlton had both died without children or descendants, and that Eliza Jane Charlton had intermarried with Stansberry S. Neal, one of the petitioners, and Malinda Charlton had married Robert Cottrell, and that the widow and all the parties lived in Washington County.

The petition further alleged, that no further administration of the estate had been granted since the said executor's death, and alleged that such administration *de bonis non* ought to be granted; and further stated that Thomas Charlton, the oldest child of the testator, was applying for such administration, and prayed process against said Thomas Charlton, the said widow and the other parties to bring them in that they might abide such order as the Court might pass. None of the parties answered, except Mary C. Charlton, the widow, who admitted all the facts alleged, except that the respondent insisted the executor had sold the property to her, and she had paid him for it, and it could not be pursued in this way; and insisted that the claim was stale, and after so long a time the Court would presume the payment of debts and legacies, and that the petition should be dismissed. She also claimed that, if administration *de bonis non* was granted, it should be granted to her. The Orphans' Court dismissed the petition, and appeal having been taken to this Court, the

only question is, should the petition have been dismissed, or should letters of administration have been granted to some one? In the order dismissing the petition, the Court refused to grant letters to Thomas Charlton, and their order in that regard forms no ground of appeal, and is not relied on, for he was not first entitled, and the petition did not ask his appointment; it only stated his application as a fact, and prayed process against him. The object of the petition was to secure the granting of letters to somebody, and we understand the dismissal of the petition, with costs upon petitioners, without granting letters in accordance with its seeking, to be an adjudication by the Court that no administration was necessary or should be granted. This determination of the matter by the Court we think was erroneous. By numerous decisions of this Court it has been long established, that when an executor or administrator dies, without having made full administration and full distribution of the assets, administration *de bonis non* is necessary; and that the title of the distributees cannot be made in any other way. *Salisbury vs. Black,* 6 *H. & J.,* 297; *Haslett vs. Glenn,* 7 *H. & J.,* 23; *State vs. Wright,* 4 *H. & J.,* 148; *Alexander vs. Stewart,* 8 *G. & J.,* 226, and many others, the latest being *Smith vs. Doe, ex dem. Dennis,* 33 *Md.,* 442.

It is not denied that this leasehold property *was included* in the *inventory* and appraisement, and does not appear to have been sold or accounted for in any subsequent proceedings in the Orphans' Court; but the respondent alleges that the administrator sold the property to her, and she paid him for it; and insists that it cannot now be pursued by a new administration. There is nothing in the record to prove this claim on the part of the respondent to be true; and if there were it would form no ground for refusing letters. Such letters are necessary for the perfection of her title, if she is entitled to have it perfected, and if true it shows an amount for distribution

Neal, *et al. vs.* Charlton.

in the late executor's hands, which can be reached in this way, more appropriately than in any other.

In *Grimes and wife, et al. vs. Talbert and wife, et al.,* 14 *Md.,* 172 and 3, the present Chief Judge of this Court says in delivering the opinion in that case, that "it was not the design of the statute to try the title to personal property in this summary way." So that administration *de bonis non* is necessary to the settlement of the question of title thus set up in the answer as proceeding from the late executor. In the case last quoted, it is also settled that lapse of time interposes no bar to the granting of such letters. Twenty-eight years had elapsed in that case from the death of the decedent to the application for letters. In reversing the order of the Orphans' Court, we do not decide, nor is it our province at this time to decide, who is entitled to have the letters. That question first belongs to the Orphans' Court. We only decide that they erred in not granting letters of administration *d. b. n. cum testamento annexo* to *some one,* and in dismissing the petition without granting such letters as it sought, and therefore we shall reverse their order dismissing the petition, and shall remand the case, to the end that letters of administration *de bonis non cum testamento annexo* may be granted to such person as the Orphans' Court may think entitled to them.

*Order reversed with costs,*
*and cause remanded.*

(Decided 17th July, 1879.)