· DANIEL KOPP *vs.* LOUISA HERRMAN, Adminis-
TRATRIX, D. B. N. C. T. A., ETC.

*Bequest of Leasehold Property to One for Life with Remainder Over
—Vesting of Interest of Remainderman—Assent of Executor—
Administration, d. b. n.—Adverse Possession—Color of Title.*

Where there is a bequest of leasehold property the assent of the exec-
utor is necessary in order to perfect title in the legatee.

And when leasehold property is bequeathed to A. for life, with re-
mainder over, the assent of · the executor to the first legacy will
enure to vest the interest of the remainderman.

X. bequeathed certain leasehold property to his wife for life, with re-
mainder to his children, then infants. The widow, who was exec-
utrix of the will and guardian of the children, passed an account in
the Orphans' Court in which the leasehold property was distributed
to herself. She subsequently, in 1864, conveyed the property to a
party under whom defendant claimed by *mesne* conveyances, recit-
ing in the deed that she conveyed one-third in her own right and two-
thirds as guardian. The proceeds were expended in part for the
benefit of X.'s children who afterwards, in 1872, executed releases.
The life-tenant died in 1866, and in 1890 letters of administration,
*d. b. n. c. t. a.*, on the estate of X. were granted to the plaintiff, one
of his children, who filed a bill against defendant, the assignee of
the leasehold property. *Held,*

1st. That there was no title to the property in the administrator *d. b. n.*
of X., but that upon the death of the life-tenant in 1866 the remain-
dermen would have been entitled to the same if it had not been
sold.

2nd. That assuming that the deed to the defendant was ineffectual to
convey the entire interest in the property, yet his entry was *bona fide*
and under color of title, and he acquired a valid title by adverse
possession against the remaindermen after their title accrued.

Appeal from the Circuit Court of Baltimore City. Peter
Herrman, being then the owner of the leasehold prop
erty in question in this case, died in the year 1860, leaving
a widow, Catherine, and two infant children, Conrad and
Elizabeth. Under the residuary clause of his will this

property was devised to the widow for life, provided she did not remarry, with remainder over to the two children in equal shares, no provision being made for the contingency of remarriage. Letters testamentary were granted to her on February 15th, 1860. She filed an inventory of the decedent's estate on the 13th day of April, 1860, which included the lot in controversy. Subsequently she intermarried with Andrew Korn, and on February 21st, 1861, Mrs. Korn, formerly Herrman, was appointed by the Orphans' Court guardian of Conrad and Elizabeth Herrman, and, on the same day, qualified as such. On December 15th, 1864, Catharine Korn, with whom her husband joined, under the supposed authority of an order of the Orphans' Court, conveyed the lot and premises in question to Henry Bachman. On the 9th day of February, 1872, Mrs. Korn being then deceased, her surviving husband, Andrew Korn, filed a guardian's account in the Orphans' Court of Peter Herrman's estate, which was duly ratified. From this account and two releases, it appears that prior to the filing of the account Conrad and Elizabeth Herrman had received from the surviving husband of their mother and guardian their full respective shares and portions of the entire estate of Peter Herrman.

The appellant purchased the property in good faith in 1878, for a consideration ($1,400), representing the full value thereof, without knowledge or notice of any outstanding claim, and improved the property to the extent of some $600. As averred in the appellee's bill of complaint, the appellant is also the owner of a lot adjoining the one in question, and the entire tract is subject to an annual rent reserved thereon in an original lease dated April 17th, 1780, John M. Galt being the owner of the reversion. On March 29th, 1878, John M. Galt and wife, in accordance with the usual covenant, executed to the appellant a renewal lease of the tract of land including the property in question, thus vesting in him the legal title to this property in question. After the execution and recording of this renewal lease, to-

wit, on November 10th, 1890, Conrad Herrman, the original plaintiff in the pending suit, procured letters of administration *de bonis non* on the personal estate of Peter Herrman. He died pending these proceedings, and his widow, Louisa Herrman, was substituted in the administration and as plaintiff in the suit. Shortly after his appointment as administrator, Conrad Herrman brought an ejectment suit against the appellant for the land in question, which is now pending in the Superior Court of Baltimore City. He filed this bill against Kopp and the reversioner, Galt, to set aside the lease to Kopp and procure a renewal lease to said administrator as the party entitled thereto under the covenant for renewal in the original lease.

The Court below (DENNIS, J.), decreed " that being of opinion that the title to said leasehold property remained in Catherine Korn, as executrix, until her death in 1866, and thereafter remained in abeyance until the appointment of Conrad Herrman as administrator *de bonis non*, with the will annexed, of Peter Herrman, deceased, when it vested in him, and after his death, pending these proceedings and the appointment of Louisa Herrman as administratrix *d. b. n. c. t. a.* of Peter Herrman, deceased, it vested in her. And being of opinion that the deed from John M. Galt and wife to the defendant, Daniel Kopp, dated March 29, 1878, was executed upon the mistaken supposition that the said Daniel Kopp had acquired the title to said leasehold lot, and but for said mistake said deed would not have been made. And the Court being of opinion that the plaintiff is entitled to have said deed set aside, so far as it relates to said leasehold, and a renewal lease of the same executed to her as administratrix as aforesaid, by the defendant, John M. Galt. It was thereupon adjudged, ordered and decreed, that the deed of lease from John M. Galt and wife to Daniel Kopp be set aside and declared null and void, in so far as it relates to the lot herein in controversy. And it was further ordered and decreed, that the defendant, John M. Galt, execute to the plaintiff, Louisa Herrman, administra-

trix *de bonis non*, with the will annexed, of Peter Herrman, deceased, a proper lease of the lot hereinabove described for 99 years, beginning April 17, 1879, in pursuance of the covenant for renewal contained in the original lease mentioned in the proceedings, under the same rent, and with like covenants and conditions as in said original lease.

"And it was further ordered and decreed, that the said defendant, Daniel Kopp, be and he is hereby perpetually enjoined from setting up, taking any advantage of, or in any way using in the ejectment suit still pending in the Superior Court of Baltimore City, brought by Conrad Herrman, administrator, &c., against him, or in any other ejectment suit that may be brought by the plaintiff against him, the said deed of March 29, 1878, or the fact of the expiration of the original lease, and no renewal thereof to the plaintiff prior to the institution of such ejectment." And Kopp was enjoined from making any defence to said ejectment, except such as he could have made if such original lease were still unexpired.

THE cause was argued before BRYAN, McSHERRY, FOWLER, BRISCOE and ROBERTS, JJ.

*Lewis Hochheimer* for the appellant.

The appellee, the plaintiff below, asserts a purely legal title to the land in the possession of the appellant, and finding that ejectment, her proper remedy, cannot successfully be maintained because the appellant has a good defence she invokes aid of chancery, upon the ground that she is *remediless at law.* The truth is, not that the party is *remediless* at law, but that she *cannot recover* at law. Why? Upon the answer to this question depends the right to maintain the present suit. The appellee's contention as to being " remediless at law " is virtually a play upon words. Equity intervenes in this class of cases upon only two grounds. If the claim is an equitable one, equity has jurisdiction to enforce it. If the claim is a legal one, but the

common law rules of evidence or the like are of such a nature as to present an obstacle to its proper proof, equity also has jurisdiction.    The present case falls under neither head. The *right* which the appellee sets up is not an equitable one. It is a claim of title to land—a purely legal claim.    *Recovery* is barred at law, not because the remedy by ejectment is inadequate, but because the right of possession, which is essential to recovery, is in the appellant.    The appellee is unable to recover at law, not because she is unable to move or establish her legal, but because she has no legal rights.

It is placing a mild construction upon the facts of this case, to say that the appellee has no *greater* equities than the appellant.    The question at issue between the parties is one of title to land in the possession of the appellant. This question of title, or right of possession, can be fully adjudicated at common law.    The present suit is an attempt to make a bill in equity perform the office of a suit in ejectment, to obtain, through the processes of chancery, a decree, in a purely legal contest, that is not authorized at common law.    No doctrine is better established than this, " that Courts of Equity will never interfere for the purpose of trying disputed questions of title."    *Hipp* v. *Babin*, 19 How. 271 ; *Lewis* v. *Cocks*, 23 Wall. 466 ; *Weirman* v. *Conklin*, 155 U. S. 514.    The bill in this case is substantially a bill to remove a defect or cloud from the plaintiff's title, in order to enable him to obtain the possession of the property in question.    It is settled by an unbroken current of authority, that such a bill will lie only if the party has both *legal title* and *possession*.    *Crook* v. *Brown*, 11 Md. 158, 173 ; *Polk* v. *Pendleton*, 31 Ib. 118, 124 ; *Textor* v. *Shipley*, 77 Ib. 473 ; *Helden* v. *Hellen*, 80 Ib. 617.

The appellant has paid full value for the lot which this proceeding seeks to wrest from him.    He has been in undisputed possession for 17 years.    He has spent hundreds of dollars in improvements.    His innocence and good faith are conceded.    The alleged irregularity upon which these proceedings are based arose over 30 years ago.    The

settlement of accounts which is now for the first time called in question, took place 23 years ago. Of the wronged infants (born some forty years ago) whose injuries this suit is claimed to redress, one has been lost sight of, and the other lies in his grave. If the present administratrix of Peter Herrman (who has slept in peace for more than 35 years) were able to prove such a perfect legal title, that a Conrt of common law, in an action of ejectment, must perforce yield to her demand, no tribunal could give judgment inflicting such hardship upon the appellant without regretting the necessity of such determination. The fact that an innocent man was defenceless at law would be deplored. But when it becomes necessary for the claimant to resort to equity to obtain a decree making the man helpless and remediless, by striking down a good legal defence which would shield him in a Court of law against a harsh legal demand, the case assumes a different shape.

*S. S. Field* (with whom was *John F. Gontrum* on the brief), for the appellee.

The title to the leasehold property remained in the executrix until her death. She filed an inventory including this lot and a first administration account, wherein it appears under the heading, "Retained by Catherine Korn, the residue of the personal estate which is bequeathed to her for life." This, if fully effective, was not a complete administration. *Smith* v. *Dennis*, 33 Md. 442 ; *Woelfel* v. *Evans*, 74 Md. 346. This is all she ever did as executrix. She never obtained any order of Court to sell, retain or otherwise dispose of said lot, and, in fact, made no attempt to sell or otherwise dispose of it, either with or without an order. At her death this was unadministered assets in the very words of the statute, " not converted into money, and not distributed and delivered or retained by the executor or former administrator under the Court's direction." *Code*, Art. 93, sec. 70. She had attempted *as guardian* to con-

vey this lot.   But if she had no title as guardian she could
transfer none.   It makes no difference, that as executrix,
she might have sold.    Her act as guardian must be regarded
just as if the guardian and the executrix had been different
persons.   *Keplinger* v. *McCubbin*, 58 Md. 204; *Long* v.
*Long*, 62 Md. 66; *Stein* v. *Friedenwald*, 79 Md. 468.   As
executrix she could not have sold without an order of the
Orphans' Court " being first had and obtained."    To em-
phasize which the statute goes on: "and any sale made
without an order of Court previously had as aforesaid, shall
be void, and no title shall pass thereby to the purchaser."
*Code*, Art. 92, sec. 276.

The title being in the executrix of Peter Herrman at the
time of her death, and passing to the administrator *de bonis
non*, upon his appointment, he had a clear right to have the
renewal lease, which the appellant had obtained, set aside.
The right to a renewal lease arose out of a covenant for
renewal in the original lease ; a covenant running with the
land to the *lessee and his assigns ;* it was in Peter Herrman
at his death ; in his executrix at her death, and vested in
the complainant upon his appointment as administrator *d.
b. n. c. t. a.*    Although this was after the expiration of the
original term, yet complainant, having been guilty of no
laches, was entitled to a renewal lease.    *Bank* v. *Haskie*,
45 Md. 207.    Neither laches nor limitations could apply
during the interval between the death of the executrix and
the appointment of the administrator *de bonis non c. t. a.*
*Smith* v. *Dennis*, 33 Md. 442, 451.

Although appellant practically admits that Catherine
Herrman never had any title as guardian, and therefore con-
veyed none, yet he alleges and attempts to show by an ac-
count passed by her second husband, six years after her
death, that Conrad and Elizabeth Herrman received some
benefit from the proceeds of the attempted sale by their
mother, as their guardian.   It is possible that some of the
proceeds may have found its way into the mouths of these
little children, or into clothes for their backs.   There is no

evidence that it did.   Further than this these children never
received, either directly or indirectly, any benefit whatever
from this leasehold or the proceeds thereof; neither did they
ever receive any part of the legacies which their father's
will commanded, the executrix or her successor, to raise
and pay to them.

BRYAN, J., delivered the opinion of the Court.

Peter Herrman died in the year 1860.   By his last will
and testament he bequeathed to his son Conrad and to his
daughter Elizabeth five hundred dollars each, to be paid to
them by his executrix or her successor, when they should
respectively reach the age of twenty-one years ; and he de-
clared that these bequests should (as it was expressed) be
*reserved and appropriated* out of the rents and profits accru-
ing from his leasehold and fee-simple property.   He de-
vised and bequeathed to his wife all the rest and residue of
his property, real and personal, for life, if she should so long
remain unmarried, but not otherwise.   In the event of her
marriage, he devised and bequeathed certain real and lease-
hold property to his two children.   He had, however, a
leasehold interest for ninety-nine years, renewable for-
ever, in a lot of ground on Caroline street, in the city of
Baltimore, of which he made no limitation over in case of
his wife's marriage.   He devised and bequeathed to his two
children, after the death of his wife, all the property given
to her by the will, expressing his purpose not to interfere
with the provisions made for them in the event of her mar-
riage ; and he appointed his wife executrix.   She married
Andrew Korn shortly after the death of the testator.   In
the year eighteen hundred and sixty-one she passed an ad-
ministration account, in which she made distribution of all
the personal estate of the testator, retaining to herself the
Caroline street lot in which she had a life estate.   Before
its passage Mrs. Korn had been appointed guardian to her
two children, who were infants.   In December, eighteen
hundred and sixty-four, she and her husband conveyed the

leasehold lot on Caroline street, to Henry Bachman, re-
citing in the deed that she conveyed one-third interest
therein in her own right, and two-thirds as guardian of her
two children, under the order of the Orphans' Court,
passed on the petition of her husband and herself as their
guardian.   The title of Bachman became vested in Daniel
Kopp, in eighteen hundred and seventy-eight, through regu-
lar *mesne* conveyances ; he having purchased the lot for full
value without notice of an outstanding claim in any one else.
In February, eighteen hundred and seventy-two (being after
the death of Mrs. Korn), her surviving husband rendered
the account of her guardianship of her two children, show-
ing that they had been overpaid.  One of the items allowed to
the guardian among the payments and disbursements is stated
as follows : "And for a lot of ground and improvements on
the east side of Caroline street, near Wilk, bequeathed to
said Catharine for life, and during her lifetime, disposed of
under the order of the Honorable, the Orphans' Court for
Baltimore City, and of which lot the proceeds of sale were
expended by said Catharine for and in behalf of herself, and
for the benefit and behoof of said wards, and none of the
said proceeds came in the hands of said Korn, this ac-
countant, as husband of said Catharine—$700.00."

This account was examined and passed by order of
the Orphans' Court.   On the following day each of the
wards executed and delivered to Korn a release in the usual
form, which was duly acknowledged and recorded.   These
releases acknowledged full satisfaction and payment of
their claims against their guardian, and each of them con-
tained an acknowledgment of "a correct and satisfactory
account of, and full satisfaction for, all claims or demands
which the ward might have against the guardian for or on
account of a certain house and lot on the east side of Car-
oline street contained in the inventory of the testator's
estate and retained by the guardian."   The principal ques-
tion presented by this record is whether Kopp has a good
title to the property purchased by him.

Louisa Herrman, the widow of Conrad Herrman, one of the above mentioned wards, has been appointed administratrix *d. b. n. c. t. a.* of Peter Herrman, the father. She contends that the title to the leasehold was never validly divested out of the executrix of the testator, and that she now holds it as administratrix *d. b. n. c. t. a.* She is complainant in a bill in equity praying certain equitable relief against Daniel Kopp, which is necessary to enable her to maintain an action of ejectment which she is prosecuting against him. In the view which we have taken of this case, it is unnecessary to refer specifically to the nature of this equitable claim. By the will Catharine Korn took a life-estate in this leasehold with remainder to her two children. Every legatee, whether of chattels, real or personal, must obtain the executor's assent to the legacy before his title can be complete and perfect. *Williams on Executors*, top page 1475 (Sixth American Edition.) The executor's assent is required even in the case of a legacy to himself. "If a term of years or other chattels be bequeathed to A. for life, with remainder to B., and the executor assents to A., such interest will inure to vest that of B.; and *e converso*; for the particular estate and the remainder constitute but one estate." *Williams on Executors*, 1479. In accordance with the general principle governing the vesting of legacies, it has been decided in *Cole's Lessee* v. *Cole*, 1 Harris & Johnson, 572, that if an executor assents to the bequest of a leasehold estate and gives up possession, he cannot thereafter maintain an ejectment for it.

In this case the assent of the executrix vested the title in herself for life and in the children in remainder. The legal title was absolutely fixed by such assent. This leasehold was charged in conjunction with other property, real and personal, with the payment of the legacies to the two children. The passage of the account did not exempt the executrix or her bondsmen from the consequence of a *devastavit*; nor did it prevent the enforcement in equity of a due proportion of the charge against the leasehold for the

payment of the pecuniary legacies. The mother's life-estate expired by her death in eighteen hundred and sixty-six; and the remaindermen would then have become entitled to the leasehold, if it had not been sold, and would thus have held the property and also the charge upon it. The charge would have been extinguished by the union of the title and the lien in the same person. *Mitchell* v. *Mitchell*, 2 Gill. 236; *Glenn* v. *Spry*, 5 Md. 110. These considerations show, we think, that there is no title whatever in the administratrix *d. b. n.* of Peterman Herrman. As it may prevent future litigation, it seems proper that we should go further and determine whether any other person mentioned in these proceedings has shown a title to this leasehold. In eighteen hundred and sixty-four the property was sold, and the proceeds expended for the benefit of the mother and her wards, and this disposition of the proceeds was by the order and sanction of the Orphans' Court. Article 93, section 165, authorizes the Court, if it deems it advantageous to the ward, to allow the guardian to sell part of the ward's personal estate for his maintenance and education. With a full knowledge of all these proceedings the wards approve of them and execute releases. It has been said that they were not of competent age when they executed these releases. This statement, however, has not been satisfactorily proved. But if they were at the time of the execution of the releases under the disability of non-age, when they reached the age of twenty-one years their right of action accrued to set aside the releases and impeach the guardian's account if any cause existed for such proceeding. And from that time the Statute of Limitations began to run against them. *Green* v. *Johnson*, 3 Gill & Johnson, 389. Kopp claims by regular *mesne* conveyances under a deed executed in eighteen hundred and sixty-four. Assuming for the sake of the argument that this deed was void, the entry of the grantee under it was made *bona fide* and therefore he acquired adverse possession. He could not by any possible interpretation of the law be considered as having acquired

less than color of title." The Courts have concurred, it is believed, without an exception, in defining ' color of title' to be that which in appearance is title, but which in reality is no title. They heve equally concurred in attaching no exclusive or peculiar character or importance to the ground of the invalidity of an apparent or colorable title ; the in quiry with them has been whether there was an apparent or colorable title, under which an entry or a claim has been made in good faith." *Wright* v. *Mattison*, 18 Howard (S. C.) 56. In *Hoye* v. *Swan's Lessee*, 5 Md. 248, it was said that " it appears to be immaterial whether the title be valid or not ; provided the entry and claim be *bona fide* under that title." And it was considered in the same case to be well settled that when one entered under color of title, by deed or other written document, he acquired actual possession to the extent of the boundaries set forth in the writing, even although the title conveyed to him should be good for nothing. There is then uninterrupted adverse possession by Kopp, and those whose title he holds for about twenty-eight years before the institution of this suit. The Statute of 21 James the First prescribing limitations to entries upon real estate is applied in this State to cases of leases for ninety-nine years, renewable forever, which have many of the features of real estate. After twenty-years adverse possession Kopp's title would be perfect against all persons except those who are within the disabilities mentioned in the second section of the statute. This section saves the rights of all persons who are under the age of twenty-one years at the time when their title first accrued ; provided they bring their suits within ten years next after reaching full age. The title of these children of Peter Herrman (if they have any), accrued at the death of their mother in eighteen hundred and sixty-six. If they had not been infants at that time it would have been barred in eighteen hundred and eighty-six. But the statute allowed them ten years after they arrived at full age to bring suit. By the computation most favorable to them, one of them reached the age of twenty-one years, the age more than

twenty years ago, and the other more than nineteen years ago.  We see nothing in the record to countervail the title of Daniel Kopp.

The Court below passed a decree in favor of the complainant below, who is now appellee.  As we have not been able to take any view of this case which gives any rights against the appellant, we will, without considering in detail the charges of the bill of complaint, reverse the decree below with costs in both Courts and dismiss the bill of complaint.

*Decree reversed with costs above and below and bill dismissed.*

(Decided January 8th, 1896.)