# FREDERICK J. CREAN ET AL. *vs.* PETER McMAHON.

*Bequest of Leasehold Property—Title of Legatee and Remaindermen—Assent of Executor to Legacy—Avoiding Lease by Re-Entry—Limitations—When Prayer Withdrawing Case from Jury May be Granted.*

When leasehold property is specifically bequeathed to A for life with remainder to his issue, the title of the legatee and remaindermen is valid, if the legatee took possession of the property with the assent of the executor after probate of the will and grant of letters testamentary. It is not necessary to show that the property had been distributed to the legatee under an administration account by an order of the Orphans' Court.

When a lease provides that it shall be void upon re-entry by the landlord for non-payment of rent, the mere non-payment without a re-entry does not end the lease.

Limitations do not begin to run against the legatee in remainder of a chattel real after a life estate, until the death of the life tenant.

After the plaintiff in an action of ejectment had closed his evidence, the defendant proposed to read the record of a case in chancery to show

that the plaintiff's title had been divested by a tax sale of the property. Plaintiff objected to the admissibility of the evidence, and, without disposing of the objection, a prayer was offered aud granted directing a verdict for the defendant for the want of legally sufficient evidence to entitle the plaintiff to recover. *Held*, that the offer of this prayer was equivalent to the withdrawal of the proposed evidence and to the closing of the case, and that the prayer could properly be then offered under the rule that such a prayer can be offered only at the end of the plaintiff's case or at the end of the whole case.

*Decided November 21st, 1907.*

Appeal from the Court of Common Pleas (STOCKBRIDGE, J.)

The cause was argued before BOYD, PAGE, PEARCE, SCHMUCKER, BURKE and ROGERS, JJ.

*S. S. Field* (with whom were *Gill & Preston*, *Frank Driscoll* and *John E. Dempster* on the brief), for the appellants.

The distribution made in this case to the tenants for life enured to the benefit of the remaindermen as well as the tenants for life, and was thus a complete distribution, and apparently the learned counsel for the defendant took the same view, because he opened his evidence and did not offer any prayer at the close of the plaintiff's case; did not offer it until the Court suggested it after he had begun to offer his testimony.

In *Matthews* v. *Turner*, 64 Md. 121, this Court decided that the title of the legatee to leasehold property depended only upon two facts—1st, the will, and 2d, the assent of the executor.

The case of *Kopp* v. *Herman*, 82 Md. 339, is similar in all respects to the case at bar.

The Court below relied upon *Drovers' Bank* v. *Hughes*, 83 Md. 352. In this case the personal property in question was a certificate of stock, which could not be distributed by matter *in pais* or by simply delivery, but must be distributed by a written assignment, and the assignment actually made by the executors did not refer to the will at all and explicitly limited the transfer to the life tenant by the expression "for life only,"

which restrictive assignment was construed by this Court to mean an assent of the executors to the transfer only of the life interest and not to the transfer of the remainder.

This decision does not at all conflict with the proposition for which the appellants contend, which is: that where property is bequeathed to one for life and to others in remainder, the delivery by the executor to the life tenant is presumed to be an assent to the transfer of the remainder, as well as to the transfer of the life estate; unless the delivery is qualified or restricted so as to show that the executor did not intend to assent to the passing of the title to the remainder.

The Court will, of course, bear in mind that the statute which now requires a deed from the executor in order to transfer the title to leasehold property (Code of 1904, Art. 93, sec. 138), was passed in 1884, and that the account in this case was stated in 1862; and that at the time this account was stated no deed or other written evidence of the executor's assent to a legacy of leasehold was required, but the same might be given by acts *in pais,* as by the legatee being permitted to go into possession of the leasehold.

Possibly since the statute which requires a deed to evidence the executor's assent, if an executor should make a deed to the life tenant for life only, this Court would hold under the case of *Drovers Bank* v. *Hughes,* that the distribution was only to the life tenant; but, prior to the statute, when no deed was required, when the distribution was done by the mere delivery, and when the only way that the executor could deliver to the remaindermen was by delivery to the life tenant; then the delivery to the life tenant or allowing the life tenant to go into possession was an assent of the executor to the transfer of the remainder as well as of the life interest.

In *Woerner's Law of Admr.,* sec. 453, the rule is thus laid down: "Since a legacy limited to several persons in succession, as for instance, a term of years or other chattel, with remainder over, constitutes but one entire legacy, it follows that the executor's assent to the interest of one is an assent to that of all." To the same effect are: *Williams on Ex'rs.,* p. 1230:

*Meyers* v. *Safe Deposit Co.*, 73 Md. 415; *Kopp* v. *Herman*, 82 Md. 339; *Siechrist* v. *Bose*, 87 Md. 292; *Mills* v. *Bailey*, 88 Md. 320.

The Court below also relied upon the case of *Wolfel* v. *Evans*, 74 Md. 346, where a married woman had died intestate and the husband having qualified as her administrator distributed the balance of the estate to himself for life with remainder to *his* children.

The distinction is obvious.   In *Wolfel* v. *Evans*, there was no will and therefore of course the parties claiming under the administration had no right to the remainder except so far as they took it by the distribution, and they were not named in the distribution account, nor did the distribution account definitely describe the next of kin of the wife, who would be entitled; because *her* next of kin were not *his* children unless they were also hers, and neither had other ' children, as to which the Court said there was no presumption one way or the other.    Hence the account not definitely describing her next of kin and not naming them, was held void and of no effect, but if there had been a will of the wife leaving the leasehold property to her husband for life with remainder to *his* children, the administration would have been complete by the distribution to himself for life with remainder to his children.

It makes no difference whether the remaindermen are named or described as the children of certain persons; nor whether the remainder vests at the testator's death or at the death of the life tenant; if by the description the remaindermen can be identified, when the time comes for the remainder to vest. *Id certum est quod certum reddi potest.*

In *Myers* v. *Safe Deposit Co.*, 73 Md. 415, the devise was to the wife for life, with certain powers of sale and appointment and in default thereof "to my children and descendants in the same manner as if I died intestate."

In *Siechrist* v. *Bose*, 87 Md. 292, the bequest was to "Margaret Siechrist for life and after her death" to be equally divided among her children *then living* and the *descendants of any who may have died*, such descendants to take the portion their parent would have taken had he or she been living.

In each of these cases the remaindermen were *described* but not named in the will, and in each case the remaindermen *were not named* in the administration account, but the property was distributed to the life tenants just as in the present case.

In the present case, if the words "living issue of Charles at Catherine Crean" are construed to mean issue living at the death of their parents, then we have exactly the same description of the remaindermen as in *Siechrist* v. *Bose*, 87 Md. 292.

In *Mills* v. *Bailey*, 88 Md. 320, the testator gave the residue of his estate to his wife for life, with power to consume it; and *alternative contingent* remainders in what she might not consume. The residue, which was money, was delivered to the life tenant.

This Court decided that the remainderman, who was not ascertained until the life tenant's death, could sue the life tenant's administrator in an action at law, thus necessarily deciding that the delivery to the life tenant, vested a legal title in the remainderman, though it could not be known, who would be entitled in remainder until the life tenant died.

On the other hand, if the will in the present case means issue living at the testator's death, then the parties entitled in remainder were definitely ascertained when he died, and before the delivery to the tenants for life.

Under either construction the administration was complete by the delivery to the life tenant.

We presume no contention will be made that there is any other defect in the plaintiff's *prima facie* case. We showed the original lease of the property in 1850; *mesne* conveyances down to Edward Burns in 1858; possession by Edward Burns under his deed from 1858 to his death in 1862; and possession under his will by his executor and legatees for life from his death in 1862 down to 1879. This was *prima facie* title in ejectment. 2 *Poe Pl. and Pr.*, sec. 469; *Newell on Ejectment*, p. 358; *Tyler on Ejectment*, p. 541; *Gamble* v. *Horr*, 40 Mich. 563; *Jones* v. *Bland*, 116 Pa. St. 194; *Smith* v. *Lorillard*, 10 John. (Law), 355-6.

We also proved that the survivor of the life tenants died

September 14th, 1889, hence the remaindermen could not be barred by limitation. *Kopp* v. *Herman*, 82 Md. 350; *Tyler on Ejectment and Adverse Poss.*, 923, 928. The Court below therefore erred in ruling that there was no legally sufficient evidence to entitle the plaintiffs to recover.

The Court also erred in suggesting and entertaining a prayer of this kind in the midst of the defendant's evidence. There are but two stages in the progress of a trial when this prayer can be offered; at the end of plaintiff's case, or at the end af the whole case. 2 *Poe Pl. and Pr.*, sec. 295B.

If the defendant, at the close of plaintiff's case, waives his right to enter the prayer by going on with his evidence, then the *plaintiff* has the right to have defendant's evidence concluded before such a prayer is offered, since the defendant's evidence might supply some defect in plaintiff's case. *State, use of Hervey* v. *B. & O.*, 69 Md. 343.

*Thomas G. Hayes* (with whom was *Henry J. Broening* on the brief), for the appellee.

I. The uncertainty of who would be the remaindermen to take the leasehold property in question, under the will of Edward Burns, made the interest of the appellants in said property a contingent remainder.

II. Distribution by a personal representative of a testator, with the sanction of the Orphans' Court, under the Maryland law, is absolutely essential to vest the legal title and right of possession in a legatee to a chattel real, in remainder, bequeathed by the will to such legatee; and this is true notwithstanding the assent of such personal representative is given to the life estate, which assent inures as an assent to the estate in remainder. This distribution was never made in the case at bar.

No legal title or right of possession can ever possibly vest in a legatee to a chattel real, under the Maryland law, until such chattel real has been, under the sanction of the Orphans' Court, distributed to such legatee by either the executor of the testator or his administrator *de bonis non c. t. a.* Equally

true and universally declared as Maryland law by this Court is the principle of law, that assent by an executor to a bequeathed life estate, in a chattel real inures, so far as assent is involved, to the estate in remainder, but that this assent, as full and complete as it may be to both estates, never dispenses with the absolute necessity under Maryland law to distribute the chattel real to the remaindermen, under the sanction of the Orphans' Court, in order to vest the legal title in said chattel real in such remaindermen. The Maryland law which expresses and imposes this requirement of distribution to vest legal title, is the Act of 1798, ch. 101, and in the Code of 1904, Art. 93, sec. 69. This Maryland law has been completely ignored and violated by Charles Crean, the executor of Wm. Burns, and no administrator *de bonis non c. t. a.* has ever supplied his omission, and hence these appellants have not the legal title to the property in question. *Alexander* v. *Stewart*, 8 G. & J. 246, 247; *Neal* v. *Charlton*, 52 Md. 498; *Foos* v. *Scarf*, 55 Md. 312.

Major Venable in his work on the Law of Property in Land, under the sub-title of Title by Administration, has thus stated the same law, as to the necessity of distribution by the personal representative to vest the legal title. "Administration is necessary to vest the complete title in the distributees. The complete title passes from the administrator by the distribution; and in no case can any one, as next of kin of the intestate, make title to or obtain possession of his distributive share except through and from the administrator."

*Assent without distribution not sufficient to vest legal title in remaindermen.* In several Maryland cases this Court has expressly held and positively decided that while assent to a life estate, given by the executor or other personal representative, will inure so far as assent is involved, to the estate in remainder, but that this assent under the Maryland law in no manner whatever dispenses with the necessity for full distribution, under the sanction of the Orphans' Court, to vest the legal title. The following Maryland cases fully show that assent without full distribution, under sanction of Orphans'

Court, is not sufficient to transfer title from the personal representative to the legatee. *Smith* v. *Doe*, 33 Md. 442; *Woelful* v. *Evans*, 74 Md. 346; *Drovers & M. Bank* v. *Hughes*, 83 Md. 355; *Myers* v. *Safe D. Co.*, 73 Md. 413.

These two principles under Maryland law, of the effect of assent and necessity of distribution when applied to the facts of this case, may be thus stated, as decided by these cases:

1. That the language used by the executor under the will of Mr. Burns, in his first and only administration account relating to the property in question, is only a distribution to the life tenants, the estate to the remaindermen, by this language, is left undistributed, and upon the death of Charles Crean, the estate in remainder was in abeyance and is still in abeyance, until an administrator *d. b. n. c. t. a.* is appointed and qualified, and who has distributed the estate to the remaindermen under the sanction of the Orphans' Court, and until this was done, *and which was never done*, no legal title whatever vested in the remaindermen, four of whom are the appellants.

2. That the assent of the executor to the life estate, as was given in this case, inures, so far as assent is involved to the estate in remainder, but this assent alone can in no possible mode or manner transfer the legal title to the remaindermen without also full and complete distribution under the sanction of the Orphans' Court, by the executor, or after his death, by a properly appointed and qualified administrator *d. b. n. c. t. a.* of the testator.

The last of the above cases, namely, *Myers* v. *Safe Deposit Co.*, *supra*, gives the proper form to be used in an administration account, when the names of the distributees are unknown, in order to distribute both the life and estate in remainder.

III. The appellants have neither the legal title nor right of possession to the leasehold property in question, sufficient in law to entitle them to recover as plaintiffs in ejectment; because the life tenants under the will of Edward Burns failed to comply with the covenant in the lease in question requiring the payment of taxes, and they were divested and dis-

possessed of their legal title and right of possession to the
property in question by a tax sale, over twenty-six years be-
fore this suit was brought, and these appellants, as remainder-
men in expectancy, acquiesced in said tax sale and failed to
pay said taxes and thereby lost all their interest in said
property as remaindermen upon the date of the tax sale. The
tax sale in question, admitted and confessed by the appellants
in their testimony, must be presumed, there being no evidence
to the contrary‘ to be in all respects *regular*. The title of the
property in question in fee simple, is shown by the record in
evidence from the Circuit Court of Baltimore City to have be-
come vested by said tax sale, as the purchaser at said tax
sale, in the Mayor and City Council of Baltimore, in 1879, 26
years before this suit was brought.

IV. The appellants have neither the legal title nor right of
possession to the leasehold property in question, sufficient in
law to entitle them as plaintiffs to recover in ejectment; be-
cause the lessor of the appellants, or his assigns, by expressly
refusing to redeem the property in question from the forfeiture
of his fee simple title in reversion, caused by the default of
the life tenants and these appellants to pay as covenanted, the
taxes, and which default resulted in said tax sale, and which
default and sale was acquiesced in by the appellants, destroyed
the title and rights of possession both of the life tenants and
these appellants in expectancy under the lease in question,
and left these appellants without either the legal title or right
of possession to the term of years expressed in said lease.

V. The appellants have neither the legal title nor right of
possession to the leasehold property in question sufficient in
law, as plaintiffs in ejectment, to recover; because the lease
creating the term of years, under which the appellants claim,
was long before the institution of this suit forfeited and became
utterly void by the appellants’ failure to pay, as they cov-
enanted to do, the ground rent on said property, and the said
ground rent is admitted by the testimony of the appellants to
be for more than a year in arrears and unpaid. A re-entry
under the covenant in the lease was not a condition precedent

to said forfeiture because of the language of the covenant in the lease and because the property in question is leasehold and not freehold.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from a judgment for the defendant in an action of ejectment brought by legatees to recover certain leasehold property specifically bequeathed to them, and tried before the Court without a jury.

The property in question was demised on January 21st, 1850, by William H. Cole to Hinson H. Cole, by deed duly executed, acknowledged, and recorded, for the term of ninety-nine years thereafter, renewable forever, in consideration of a yearly rent of $240, reserved in said deed, and the title to said leasehold property was traced by successive assignments to Edward Burns, who died seized thereof in April, 1862. The plaintiffs offered in evidence a certified copy of the will of Edward Burns, and of letters testamentary thereon granted by the Orphans' Court of Baltimore City to Charles Crean, the executor named therein, on May 6th, 1862. The bequest of this property is set out in the following clause of the will:

"After the payment of my just debts and the funeral expenses, I give and bequeath to Charles Crean, and Catherine his wife, my two two-story brick houses on the west side of Marsh Market Space in the city of Baltimore and known as Nos. 40 and 42. To hold the same for and during their natural lives, and to enjoy the rents and profits arising from the same, and immediately after the death of the survivor, then I give and bequeath the aforesaid houses unto the living issue of the aforesaid Charles and Catherine Crean share and share alike, absolutely forever."

The plaintiffs also offered in evidence the notice to creditors by the executor of Edward Burns, and a certified copy of the inventory returned by him to the Court May 10th, 1862, showing a total personal estate of $2,714.30, which included as a distinct item, the two two-story brick houses mentioned, with the lot on which they stood, subject to said ground rent, and valued in said inventory at $1,000.

They also offered in evidence a certified copy of the administration account of Charles Crean, executor of Edward Burns, passed June 30th, 1862.   It appears from this account that the estate was not adequate, after the payment of debts, for the payment of the legacies in full, all of which were accordingly properly abated, and the account contains the following item relating to the bequest of these houses :

"Allowed this accountant for the following property bequeathed to him and Catherine, his wife, for and during their natural lives, and retained by them, viz: A lot of ground and the improvements thereon on the west side of Centre Market Space appraised at.... .......... . ...... $1,000.

Less their proportion of deficiency,............    316.67

$ 683.33"

Charles and Catherine Crean lived with Edward Burns sometime before his death, in that property, and continued to live there until 1873.   Charles Crean died August 4th, 1884, and Catherine Crean died September 14th, 1889. At the death of Catherine, the survivor, there were six children representing her living issue by Charles Crean, of whom the plaintiffs are four, the other two living somewhere in the west, and not being parties to this suit.

One of the plaintiffs, Mrs. Kidd, testified that after the family removed from this property in 1873 they rented it out until dispossessed by a tax sale which occurred before her mother's death, but she could not fix the year, though she knew the defendant was in possession when her mother died in 1889, and she also testified that none of her brothers or sisters nor she herself ever paid any ground rent or taxes on the property, or received any income therefrom, nor anything from the proceeds of said tax sale; and Mrs. Thirlkel and Frederick J. Crean two of the other plaintiffs confirmed her statement.

Here the plaintiffs closed their case, wherupon the defendant offered in evidence one of the chancery records of the Circuit Court of Baltimore City and proposed to read therefrom part of the report of John H. B. Latrobe, surviving trustee

under the will of Frederick Bedemeyer, which report was made January 13th, 1879, for the purpose of showing "that the ground rent upon this property was sold for taxes, and the city was obliged to buy it in, no one being willing to bid the arrears, and the *cestui que* trust not being willing the trustee should pay them to regain possession of a property rendered comparatively worthless by depreciation of property in the neighborhood," and that the ground rent was sold for $300. To this offer the plaintiff objected, and without deciding thereon, the Court suggested to the defendant to offer a prayer directing a verdict for the defendant, intimating that in the opinion of the Court an administration *d. b. n. c. t. a.* was essential to pass title to the plaintiffs. The defendant thereupon offered a prayer that under the pleadings and evidence in the case there was no evidence legally sufficient to entitle the plaintiff to recover, which was granted, and to this ruling the single exception was taken.

The first and principal, question raised by this appeal, is whether it was necessary, in addition to the proof offered by the plaintiff, to show that the property in question was actually, in and by the administration account, of Charles Crean distributed to these legatees by the Orphans' Court.

If the property was so actually distributed to the plaintiffs, then the appellant contends the further question arises, whether after the plaintiffs had closed their case, and after the defendant had gone into his testimony, *but before he had closed it*, the Court could properly withdraw the case from its own consideration sitting as a jury.

The main question was argued fully and ably. and an elaborate brief was filed by the learned counsel for the appellee, which we have carefully read and considered, but we are unable to agree with its conclusions.

The contention of the appellee upon this point is stated with his accustomed vigor in the following passage extracted from his brief: "No legal title or right of possession can ever possibly vest in a legatee to a chattel real, under the Maryland law, until such chattel real has been, under the sanction of the

Orphans' Court, distributed to such legatee by either the executor of the testator, or his administrator *de bonis non c. t. a.* Equally true and universally declared as Maryland law by this Court, is the principle of law to be hereafter fully considered and discussed in this brief, that assent by an executor to a bequeated life estate in a chattel real, inures, so far as assent is involved, to the estate in remainder, *but that this assent, as full as it may be to both estates, never dispenses with the absolute necessity under Maryland law, to distribute the chattel real to the remainderman under the sanction of the Orphans' Court, in order to vest the legal title in said chattel real in such remainderman."* For this proposition he relies upon the following seven cases. *Alexander* v. *Stewart,* 8 G. & J. 246; *Smith* v. *Doe,* 33 Md. 442; *Neal* v. *Charlton,* 52 Md. 498 ; *Foos* v. *Scharf,* 55 Md. 312; *Myers* v. *Safe Deposit Co.,* 73 Md. 413; *Woelfel* v. *Evans,* 74 Md. 346, and *Drovers and Mechanics Bk.* v. *Hughes,* 83 Md. 355.

The appellant relies upon two cases, viz: *Kopp* v. *Herman,* 82 Md. 339, and *Matthews* v. *Turner,* 64 Md. 109.

We will first examine these two cases.

In *Matthews* v. *Turner,* a very short opinion was filed by JUDGE ROBINSON, speaking for the six Judges who heard the case, in which he said, "The main question in this appeal is whether in an action by legatees to recover certain leasehold property specifically bequeathed to them, it is necessary to prove in addtion to the probate of the will, and the grant of letters testamentary, and the assent of the executor to the legacy, that the property was included in the inventory returned by the executors, *and was distributed to the legatees by the order of* the Orphans' Court." (Here we break the continuity of the opinion cited to note that the last sentence, deals with the precise thing declared by the argument of the appellee to be indispensable, viz: the distribution of the chattel real to the remainderman under the sanction of the Orphans' Court in order to vest in him the legal title). The Court then proceeds to say, "There ought not to be any difficulty in determining this question. Upon the death of the testator his entire per-

sonal estate, including property specifically bequeathed, devolves upon the executor, to be administered by him for the benefit of creditors, and the payment of legacies, and the balance if any, to be distributed to the persons entitled under the statute of distributions.   Strictly speaking the entire personal estate ought to be returned in the inventory to the Orphans' Court.   *But the title of a legatee to property specifically bequeathed does not depend upon the inventory returned by the executor, nor does it necessarily depend upon the orders* of the Orphans' Court.   By the will itself, the legatee gets an inchoate title, and when the debts are paid, and the executor assents to the delivery of the property to the legatees, the title of the latter is thereby perfected.   Nothing more is necessary, and upon the title thus perfected, the legatee may maintain an action of ejectment if the property be leasehold, or an action of trover for the conversion of personal property."   The Court therefore held there was no error in the ruling of the lower Court in excluding certified copies of the inventory and of the administration account in that case offered by the defendant for the purpose of showing that the property in question was not included in the inventory *and had not been distributed to the plaintiffs through the Orphans' Court.*

It is obvious that the distinction made in this concise opinion, is that inherently existing between the title of a legatee derived from the testator through the will, and that of the next of kin determined solely by the statute of distribution, and evidenced by the order of Court ascertaining who answers to that description.   In all cases the assent of the executor to the delivery of the property is necessary for his protection against creditors of his testator, and against insufficiency of assets to pay all legacies in full, but in the case before us, that assent was given. · In *Williams on Executors*, top page 1479, (6 Amer. Ed.) it is said, "If a term of years or other chattels be bequeathed to A for life, with remainder to B and the executor assents to A, such interest will enure to vest that of B; and *e converso*, for the particular estate and the remainder constitute but one estate."   That much was

expressly admitted in the passage quoted from appellees brief, and it was also quoted in *Kopp* v. *Herman*, 82 Md. 348, the other case relied on by the appellant.   In that case, immediately after citing the above text of *Williams on Executors*, the Court added: "In accordance with the general principle governing the vesting of legacies it has been decided in *Cole's Lessee* v. *Cole*, 1 H. & J 572, that if an executor assents to the bequest of a leasehold estate and *gives up possession*, he cannot thereafter maintain an ejectment for it."   It would be strange indeed, if the intervention of an administrator *d. b. n.* were required to pass a title to a legatee in remainder where the possession had been given up by the executor himself to the legatee for life, when the executor himself if still living could not maintain ejectment, because he had given possession to the legatee for life.   And so in *Kopp* v. *Herman, supra,* the Court went on immediately to say: "In this case, the assent of the executrix vested the title in herself for life and in the children in remainder.   The legal title was absolutely fixed by such assent."   It was argued in this case by the appellee that the distribution in *Kopp* v. *Herman* to the remainderman consisted in a sale of the property by the guardian under the order of the Orphans' Court and the expenditure of the proceeds for the life tenant and the remainderman and the satisfaction and release of the latter, and that it was that *complete distribution* that led the Court to decide that there was no necessity for an administration *d. b. n.*   But it will be seen that the assent of the executrix was given in 1861, "When she passed her account in which she made distribution of all the personal estate of the testator, retaining to herself the Caroline street lot in which she had a life estate," and that it was not until 1864 that she, in her own right and as guardian for her children, sold and conveyed this lot, and the Court then went on to say, "The mother's life estate expired by her death in 1866, and the remaindermen would *then have become entitled to the leasehold* if it had not been sold."

That the Court meant in *Matthew* v. *Turner, supra,* precisely what JUDGE ROBINSON there said, we think is apparent

from what was said in *Myers v. Forbes*, 74 Md. 355, where .our late lamented CHIEF JUSTICE McSHERRY, in dealing with a similar case, said, "*Generally speaking* an administration in the Orphans' Court by an executor or an administrator *de bonis non, cum testamento annexo,* is necessary to confer title to a legatee, *but there are some qualifications to this rule.* For instance in *Matthews v. Turner*, 64 Md. 109, it was held that the title of a legatee to property *specifically* bequeathed did not depend upon the inventory returned by the executor, nor *necessarily* upon the orders of the Orphans' Court, and the reason given was, that by the will itself the legatee gets an inchoate title, and when the debts are paid and the executor assents to the delivery of the property to the legatee the title of the latter becomes perfect. * * * When a case involving the construction of the wills of Charles Myers and Mary E. Myers, was before us during the last October Term this Court held that the distribution made in the Orphans' Court in 1864 by Mrs. Myers of the leasehold and other property mentioned in her inventory, was a complete and final distribution to herself for life and to the persons entitled in remainder under the will of her husband, and that consequently no part of that property passed to the administrators *d. b. n. c. t. a.*" It will thus be seen that in *Myers v. Forbes,* *supra,* the Court not only approves and confirms *Matthews v. Turner,* but finds no inconsistency between that case and *Myers v. Safe Deposit Co.,* 73 Md. which is one of the seven cases relied on by the appellee to support his contention.

We will now refer briefly to the other cases cited by the appellee with the view of showing, why we do not regard them as irreconcilable with *Matthews v. Turner, supra.* The first of these is *Alexander v. Stewart*, 8 G. & J. 227. There the testator devised the residue of his estate to Stewart and Morris in trust for his son Eaton for life with remainder to his children, and appointed Eaton his executor. Eaton passed his first and only administration account, showing in the language of the bill filed upon which the case was made, "that the residue of the estate *then in his hands was equitably* the

property of the said trustees for the trust established by the
will of John Partridge." But there was no distribution or de-
livery to the trustees. Hence Mr. McMahon in his argument
asked, "Has the executor fully administered ?" and answers
his own question, "No, he was ready to do it." Readiness to
perform is not performance—and hence the Court in its opin-
ion in that case says, "The executor had not completed the
administration, not having paid all the legacies (though offer-
ing himself in his account ready to pay them) nor delivered
over the property in his hands to the persons entitled thereto,
without which, there could be no full administration."

In *Smith* v. *Dennis*, 33 Md. 442, the residuum was bequeathed
to a slave, and he not belonging to the testator, the bequest
of that interest failed, and it remained undisposed of "and
formed part of the testators estate for distribution to his next
of kin."

It was of course clear upon all the cases that administration
*d. b. n.* was essential in that case.

In *Neal* v. *Charlton*, 52 Md. 498, the leasehold in question
was mentioned in the inventory, but was not accounted for in
the administration account, nor sold under any subsequent
proceeding. It was therefore not merely undistributed but un-
administered property, as much so as if the executors had had
no knowledge of it.

In *Foos* v. *Scarf*, 55 Md. 301, the property in question was
conveyed to a trustee for the grantor's wife during her life,
and after her death to her issue, if any, otherwise to revert to
the grantors estate. The wife died without issue, and upon
her death the property in the language of the Court on page
312, "reverted or fell back into his estate," and consequently
an administration was indispensable in order to give a good
title to the next of kin, who take under the statute of distribu-
tions only.

We do not think it necessary to make any further reference
to *Myers* v. *Safe Deposit Company*, 73 Md. 413, except to say
that while the form of distribution there used may be approved
as tending to avoid question as to including the remainder-

man's interest, we cannot regard that form, or any special mention of the remainderman, as essential to pass title to the legatee of a chattel real specifically bequeathed to one in remainder after a life estate.

In *Woelfel* v. *Evans*, 74 Md. 346, Mrs. Evans died *intestate*. The distribution was not to legatees but to next of kin. Moreover the attempted distribution was to Mr. Evans' children, who might not be the children of Mrs. Evans, and as the Court said was "declaratory of no right of the true distributees of the wife's estate upon the death of the husband."

In *Drovers' Bank* v. *Hughes*, 83 Md. 360, the distribution was "to Emma E. Reid" of certain shares of bank stock, bequeathed to her for life with remainder to her children. JUDGE PAGE says "the only assignment made by them (the executors) was to Mrs. Reid 'for life only,' so that it would seem that while the life interest was transferred to Mrs. Reid, the title to remainder continues in the executors, and is still undistributed." In other words, the Court held that the language of the assignment operated to restrict the distribution according to the natural tenor of the words employed, and to prevent it from embracing the remaindermen.

It is not possible to insure literal uniformity and perfect harmony in judicial decisions upon analogous questions presented under constantly varying facts, and we find no irreconcilable conflict between the cases we have perhaps too tediously attempted to review.

We cannot adopt the contention of the appellee that the lease in this case was *ipso facto* forfeited by the non-payment of the rent reserved, and that no re-entry was necessary for that purpose. Its language, we think, clearly imports that it was to be void, *only* on re-entry. We find nothing in conflict with this view, in *Shaufelter* v. *Horner*, 81 Md. 621, relied on by the appellee on this point. The terms of the lease in this case do not bring it within the meaning of the passage quoted in the appellee's brief from Kent's Commentaries, nor of the passage from Broome and Hadley's Commentaries quoted in *Shanfelter* v. *Horner*, because, in the case before us, non-

payment of rent, *together with re-entry*, constitute the one and only event in which the lease was to be void.

Mrs. Crean died in September, 1889, and the appellants are not therefore barred by limitation. *Kopp* v. *Herman*, 82 Md. 350; *Tyler on Ejectment*, 928; 3 *Washburn on Real Estate*, 132, 133. After the plaintiffs had closed their case, the defendant proceeded immediately to offer testimony in his own behalf, and proposed to read from a chancery record for the purpose of showing that the plaintiff's title had been divested by a tax sale of the property in question, but objection was made to the admission of this evidence, and while this objection was pending and undisposed of, a prayer to take the case from the Court sitting as a jury, was offered and granted.

It appears from what we have already said in reference to the main point in the case, that we are of opinion this prayer could not have been properly granted at the close of the plaintiff's case, and so far therefore as this appeal is concerned it would not be necessary to notice the contention of the appellant that it was error to allow the prayer to be offered as it was in this case. But as the question might be under other circumstances of some importance in practice, we will briefly consider it.

It was argued in the appellee's brief that the report of the trustees in the chancery record *offered* in evidence, afforded proof of a re-entry, or what was equivalent thereto, but without inquiring into this suggestion, it will be sufficient to say, that as the objection to the evidence was not overruled, the record was *not in evidence* at all, and it cannot therefore be made the basis of any deduction whatever. And this consideration, we think, is decisive also of the question now under consideration.

It is true as argued by the appellant that a prayer of this character can only be offered either at the end of the plaintiff's case, or at the end of the whole case, and the reason for this as stated in *State, use of Harvey* v. *B. & O. R. R.*, 69 Md. 340, is, that "the evidence offered by the defendant may, and often does supply a defect in the proof of the plaintiff. When

therefore an instruction is asked that takes the case away from the jury, after the whole evidence is before the Court, the whole evidence must be considered by the Court, and the ruling be based upon that, and not be confined to the evidence of the plaintiffs."

. In the present case *no evidence* for the defendant had been admitted. The offer of this prayer under the circumstances of this case, was equivalent to a withdrawal of the offer of the evidence, and to the closing of the case. It cannot be supposed that the learned Judge of the lower Court, if he had refused this prayer at that time, would have permitted the defendant to offer further testimony, and again to offer such prayer. We must assume that he regarded the offering of this prayer as the closing of the case, no evidence having been *admitted* for defendant, and the plaintiff therefore having no evidence to rebut, and this being so we must hold the prayer was offered at a proper stage of the case, but for the reasons already stated was erroneously granted at any stage of the case.

The judgment will be reversed and the cause be remanded for a new trial, the costs above and below to be paid by the appellee.

*Reversed and remanded.*