Clarence E. Miller and Benjamin E. Negley, Executors of the Estate of Samuel S. Miller, Deceased, Appellees, v. Fred S. Miller, Executor of the Estate of Mary C. Miller, Deceased, Appellant.

## Gen. No. 7,670.

ESTATES OF DECEDENTS—*distribution of personalty to life tenant as distribution to remaindermen.* Distribution of the personalty of testator's estate to the widow under a will which gave her a life estate in all the property, real and personal, with power of sale over the personalty and to reinvest the proceeds, and provided that any excess of income over that necessary for her support should be added to and increase the value and extent of the life estate, which upon death of the widow was devised to testator's children, was a distribution to the remaindermen which exhausted the powers of the husband's executors over such personalty, no further specific or implied powers in them or the life tenant being contained in the will.

Appeal by defendant from the Circuit Court of Fulton county; the Hon. WALTER C. FRANK, Judge, presiding. Heard in this court at the October term, 1923. Reversed and remanded with directions. Opinion filed January 10, 1924.

M. P. RICE, for appellant.

HARVEY H. ATHERTON and GLENN RATCLIFF, for appellees.

Miller et al. v. Miller, 232 Ill. App. 86.

MR. JUSTICE SHURTLEFF delivered the opinion of the court.

This is an appeal from the circuit court of Fulton county.

Samuel S. Miller died testate March 25, 1892. His will was duly probated and appellees appointed executors of his estate. After the payment of debts the will gives and bequeaths to the surviving wife, Mary C. Miller, all the property, real and personal, for life with all rents and profits thereon to be used and enjoyed by her as fully and freely as the testator had done, giving her the power to sell any of the property except real estate and invest the proceeds in other property, and directing her out of the proceeds of such sales or from the income thereof to pay $500 as "outfits" to such of the children as might marry after his death, expressing it as his "object" that should there be any excess over a generous support for herself that such excess be added to and go to increase the value and extent of the "life estate." The fourth clause expressly provides that upon the death of the widow all the property constituting the "life estate" together with all additions and increase thereto are given, devised and bequeathed to his well-beloved children, share alike, directing that the shares of two of the children should be charged with certain stated advancements.

The executors on April 11, 1894, filed in the county court their final report showing all debts paid, including their commissions, and stating the balance of the personal estate, consisting of farm implements, household goods and stock, amounting to $1,085.58, had been turned over to the widow, which report was approved by the county court April 13, 1894, but there appears to be no final order discharging said executors. After having administered upon his personal estate and having disposed of the same as directed, the will imposes no other duties on them.

Mary C. Miller, the surviving widow, died testate October 7, 1922, and her will probated November 9, 1922, and appellant duly nominated, appointed and qualified as executor of her estate. Duly appointed appraisers appraised all of her chattels at the aggregate value of $319.53.

Her executor filed his inventory listing real estate and the appraised chattels, together with divers notes, accounts, U. S. bonds, cash, war savings stamps, all aggregating $9,128.75, exclusive of her real estate. The appraisement bill was approved by the county judge November 22, 1922, and the inventory was approved on January 9, 1923. Appellees claim all said personal property belongs to them as executors of the estate of Samuel S. Miller, deceased. Appellant claims that all said property belongs to him as the executor of the estate of Mary C. Miller, deceased, subject to the trust interest therein of the children of the said deceased father. Appellees have undertaken to secure possession of the said property by summary proceedings under sections 81 and 82 of the Administration Act [Cahill's Ill. St. ch. 3, ¶¶ 82, 83]. On January 20, 1923, appellees filed their petition for citation in the county court against Fred S. Miller, individually and against him as executor of his mother's estate, to procure possession of said personal estate. Upon a hearing in the county court the petition was dismissed and the writ of citation quashed. Appeal was taken by the petitioners to the circuit court where, on motion of petitioners, the petition was dismissed as to Fred S. Miller, individually, and the circuit court entered judgment and order against appellant as executor to assign and transfer to appellees all of the personal estate described in the petition, and which was the same property as appraised and inventoried and belonging to her estate, said inventory and appraisement bill having already been approved by the county court. From this judgment appellant prayed and obtained an appeal to this court.

It was stipulated in the case that the appellant, as executor, was making no claim to the property inventoried as belonging to the estate of Mary C. Miller, deceased, in his individual capacity but simply as executor of her estate and that he received all of the property and came into its possession after his mother's decease.

The question is squarely raised in this case as to the effect of a distribution of personalty to a tenant for life, and whether such distribution is a distribution also to the remaindermen. The will in this case contains no affirmative powers of trust, nor any implied powers, except such as may be construed to attach to the life tenant. The Illinois courts do not seem to have passed upon this specific question as counsel cite no case of any court in exact point, but present cases from which it may be inferred that the property in the life tenant's hands constitutes a trust. It is, under such circumstances, so treated in Perry on Trusts, 6th ed., vol. 2, secs. 540, 542; also in *Welsch v. Belleville Sav. Bank,* 94 Ill. 191; Woerner on the Law of Administration, vol. 2, sec. 456.

Appellant presents a similar case in *Deiterman v. Ruppel,* 200 Ill. 199. In this case the testator left a legacy of $2,000 to his widow for her use during her life and the remainder to a nephew and niece. Upon the death of the widow a claim was filed by the remaindermen, as of the sixth class (the then classification for trust moneys) against her estate, and the court say:

"Without considering the extent of the equitable jurisdiction of the probate court in such matters, it is a sufficient answer to say that the trust was not implied but was express, and by the terms of the will the appellee became entitled to the legacy upon the death of Mrs. Schneider, who had received it for her use during her life, but to be paid over to the nephew and niece after her death. Section 70 [Cahill's Ill. St. ch. 3, ¶ 71] of the act in regard to the administration of estates expressly provides that 'where the decedent

has received money in trust for any purpose, his executor or administrator shall pay out of the estate the amount thus received and not accounted for,' as of the sixth class. We are of the opinion that the court had jurisdiction and that the refusal to dismiss the cause was proper.''

At least in this case the court held the legacy distributed and no longer a part of the testator's estate.

In *Kinney v. Keplinger,* 172 Ill. 449, cited by appellees, the facts differ from the situation in this case, in that the will of the testator directed the second executor to take charge of the personal estate, in the hands of the first executor, for life, upon her decease. In other words, the second executor was, by the terms of the will, a remainderman with a power. It was stipulated that the chattel property inventoried by appellant as executor of the estate of his mother was the same chattels she had received from her husband's estate, but their value had shrunk to $329.12. The balance of appellant's inventory was the rents and income from land which had accrued in the widow's hands during her lifetime after the testator's decease.

Without any reference as to the ownership of this fund or the jurisdiction of the county court under sections 81 and 82 of the Administration Act, it is the opinion of this court that the powers of the executors of the last will of Samuel S. Miller, deceased, as to this estate, were exhausted when the property was distributed to the widow as life tenant. No further specific or implied powers are pointed out in the will. *Scott v. Scott,* 137 Iowa 239, 114 N. W. 881, and found in 23 L. R. A. (N. S.) 716, throws some light on this subject and in a similar case holds: ''The testator had the right to make the life tenant the trustee of the property bequeathed, without requiring security from him.'' It was held in this case that the life tenant, in a proper case, could be required to give bonds.

The question of the effect of a distribution to the life tenant was passed upon in *Crean v. McMahon,* 106

Md. 507, 68 Atl. 265, found in 14 L. R. A. (N. S.) 798, and it was there held, upon elaborate reasoning, that the distribution to the life tenant was a distribution to the remainderman and it would follow that the remainderman would seek his legacy or devise from the life tenant's estate. The court said (p. 802):

"In all cases the assent of the executor to the delivery of the property is necessary for his protection against creditors of his testator, and against insufficiency of assets to pay all legacies in full; but in the case before us that assent was given. In Williams on Executors, 6th Am. ed., p. 1479, it is said: 'If a term of years, or other chattel, be bequeathed to A for life, with remainder to B, and the executor assents to the interest of A, such interest will inure to vest that of B, and *e converso;* for the particular estate and the remainder constitute but one estate.' That much was expressly admitted in the passage quoted from appellee's brief; and it was also quoted in *Kopp v. Herrman,* 82 Md. 348, 33 Atl. 646, the other case relied on by the appellant. In that case, immediately after citing the above text of Williams on Executors, the court added: 'In accordance with the general principle governing the vesting of legacies, it has been decided in *Cole's Lessee v. Cole,* 1 Harr. & J. [Md.] 572, that, if an executor assents to the bequest of a leasehold estate, and gives up possession, he cannot thereafter maintain an ejectment for it.' It would be strange, indeed, if the intervention of an administrator *d. b. n.* were required to pass a title to a legatee in remainder where the possession had been given up by the executor himself to the legatee for life, when the executor himself, if still living, could not maintain ejectment, because he had given possession to the legatee for life. And so in *Kopp v. Herrman, supra,* the court went on immediately to say: 'In this case the assent of the executrix vested the title in herself for life and in the children in remainder.' "

The court in *Crean v. McMahon, supra,* takes up and discusses various cases, as they have arisen in different forms, and makes plain that in all cases where the

executors have assented to a delivery of the property to a life tenant it has passed out of and beyond their control and becomes a fully administered estate. In the summary of the note attached to this case, the author states:

"The courts passing upon the question are in accord in holding, as does *Crean v. McMahon,* that the distribution or delivery of property to a legatee or devisee, who has a life estate therein, inures to the benefit of the remainderman; and, upon the termination of the life estate, the title and right of possession vest absolutely in the remainderman, without any action on the part of the executor or administrator."

Cases are cited in the note from a number of the States where the question has been raised and there appears to be no authority to the contrary and the author ends:

"It is, of course, self-evident that if, by the terms of the will, a trust estate is created, or some duty is devolved upon the executor to be performed after the termination of the life estate, the doctrine herein considered would not apply."

We conclude that appellees, as the executors of the estate of Samuel S. Miller, deceased, have no right, title or claim, as executors or as an individual, in this proceeding to any of the property in question, and the judgment of the circuit court of Fulton county should be reversed and the judgment of the county court of the same county affirmed.

Accordingly, the judgment of the circuit court of Fulton county is reversed and the cause remanded with directions to that court to dismiss the petition of petitioners, appellees.

*Reversed and remanded with directions.*